[Cite as *Cain v. Cain*, 2019-Ohio-184.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| JULIE M. CAIN, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-P-0084** |
| JOHN A. CAIN, | : | |
| Defendant-Appellant. | : | |

Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 2009 DR 00597.

Judgment: Affirmed.

*Michael A. Noble*, Lentz, Noble & Heavner, LLC, 228 West Main Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*John A. Cain*, pro se, 999 Renninger Road, Apt. 16, Akron, OH 44319 (Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, John A. Cain, appeals the denial of two post-decree motions in the underlying divorce action. We affirm.

{¶2} The parties were married for approximately three years and have a daughter, E.C. Before E.C.'s birth, the parties separated as appellant was having psychological issues and was prone to abusive behavior. In May 2011, a stipulated final divorce was issued naming appellee the residential parent and legal custodian. Appellant

was granted supervised visitation.

{¶3}  Within two years of divorce, the parties became embroiled in a series of disagreements pertaining to appellant's visitation, his treatment of E.C., and the effect of appellee's new boyfriend on E.C.  At some point, E.C. accused appellant of engaging in sexual behavior with her.  Thus, appellee unilaterally stopped appellant's visitation.  An investigation revealed no evidence corroborating E.C.'s accusation, and appellee did not move to terminate visitation.  After appellant filed a contempt motion, supervised visitation continued.

{¶4}  Although appellee initially lived with her parents following the divorce, she and E.C. subsequently resided with appellee's boyfriend.  At some point, appellee and her boyfriend had a physical altercation resulting in a domestic violence charge against him.  As the altercation occurred in E.C.'s presence, appellant moved for change of custody.  The motion became moot when appellee agreed not to allow any further contact between E.C. and her boyfriend.

{¶5}  Approximately six months later, appellee violated the agreement as evidenced in posted photographs on social media showing E.C. with appellee and her boyfriend.  Shortly thereafter, appellee married her boyfriend and took E.C. to again live with him.  In light of this, Lynne Benek, appellant's mother and paternal grandmother, filed an emergency motion for temporary legal custody of E.C., asserting that it was unsafe for her to cohabitate with appellee and her husband.  Following hearing, the trial court granted Benek's motion, and E.C. lived with Benek for nine months.

{¶6}  Given her status as temporary legal custodian, Benek moved to intervene in the divorce proceeding.  After that motion was also granted, she moved for permanent custody, maintaining that appellee was constantly denying appellant his visitation rights

2

by asserting false accusations. Before the permanent custody motion was heard, appellee moved back to her parents' home because of a second domestic violence altercation with her husband. Accordingly, at the outset of the next hearing, she orally moved for custody on the grounds that, since she planned to bring a separate divorce action against her husband, E.C. would no longer be exposed to him.

{¶7} Finding that Benek did not prove that appellee was unfit, the trial court overruled Benek's motion for permanent custody and ordered legal custody of E.C. to appellee, so long as she continues to reside with her parents. As to appellant, the court reestablished his visitation provided Benek supervised. Benek appealed this judgment, but we affirmed it in all respects. *See Cain v. Cain*, 11th Dist. Portage No. 2016-P-0011, 2017-Ohio-708.

{¶8} In April 2017, Benek again moved for permanent custody of E.C., alleging appellee as unfit due to refusal to facilitate visitation. In support, Benek referenced a new confrontation between the two families and events that the court had already considered in deciding prior motions.

{¶9} Before the trial court heard Benek's motion, appellant moved for contempt on the grounds that appellee failed to comply with the trial court's visitation order relating to summer visitation and for a change of custody, due to appellee's consistent interference with his visitation rights. Alternatively, appellant requested unsupervised visitation.

{¶10} An evidentiary hearing on all pending motions was held during which the trial court heard testimony from appellant, appellee, and Benek. As to appellant's contempt motion, the court overruled it on the basis that, even though appellee had "technically" failed to follow certain visitation orders, her conduct was not willful or wanton.

3

As to the motions for change of custody, the court denied both on the basis that neither appellant nor Benek established a change in circumstances. Appellant's alternative request for unsupervised visitation was granted. Last, the court dismissed Benek as a party.

{¶11} Appellant appeals assigning the following as error:

{¶12} "[1.] The trial court committed error in finding the contempt 'not willful.' There is an ongoing pattern of conduct on the issue that should have been considered when weighing the best interest of the child.

{¶13} "[2.] The trial court committed error in not making a change of custody for the minor child, E.C. It is well established that when a parent engages in such a conduct as to hinder the relationship with the other parent that it is detrimental to the child and is grounds to be found unfit.

{¶14} "[3.] Did the trial court commit error in not naming [appellant] as custodial parent? There had not been a finding that makes him unfit or unsuitable by the court."

{¶15} Appellant's first assignment pertains to the trial court's denial of his motion for contempt against appellee for not affording him visitation.

{¶16} "'A court's authority to punish a party for contempt for failure to comply with a prior order derives from both the court's inherent authority and from statutory authority. *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870; *Hale v. State* (1896), 55 Ohio St. 210, 45 N.E. 199. Contempt is a disregard or, or disobedience to, the orders or commands of judicial authority. *State v. Flinn* (1982), 7 Ohio App.3d 294, 7 OBR 377, 455 N.E.2d 691. Indirect contempt may include the disobedience of, or resistance to, a lawful order, judgment, or command of a court officer. See R.C. 2705.02. Courts must make civil contempt findings based upon clear and convincing evidence.

4

*ConTex, Inc. v. Consol. Technologies, Inc.* (1988), 40 Ohio App.3d 94, 531 N.E.2d 1353.' (Footnote omitted). *Dozer v. Dozer*, 88 Ohio App.3d 296, 302, 6233 N.E.2d 1272 (4th Dist.1993).

{¶17} "A finding of contempt must be made even if the party did not intentionally disregard a court order; i.e., the fact that a party acted innocently is not a valid defense to a contempt claim. *Pugh v. Pugh*, 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph three of the syllabus. In other words, '[p]]roof of purposeful, willing or intentional violation of a court order is *not* a prerequisite to a finding of contempt. * * * "It is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result."' (Emphasis sic). *Id.*, quoting *Pedone v. Pedone*, 11 Ohio App.3d 164, 165, 463 N.E.2d 656 (1983)." *In the Matter of G.M.*, 11th Dist. Trumbull No. 2016-T-0092, 2017-Ohio-8145, 98 N.E.3d 790, ¶16-17.

{¶18} During the evidentiary hearing, appellant maintained that appellee failed to comply with two visitation orders. The first order, issued in September 2016 while Benek's prior appeal was pending, gave appellant an extra day of visitation each week. The second order, issued in June 2017, granted appellant visitation in accordance with the trial court's standard parenting time schedule. Under that schedule, he was entitled to six weeks of visitation during the summer. Regarding each of these orders, appellant testified that appellee did not take any steps to satisfy.

{¶19} As part of her testimony, appellee ceded that the controlling visitation orders were not followed, but asserted that the problems were attributable to appellant. As to the "one day extra" order, she testified that he did not contact her and tell her which day

5

of the week he wanted. Appellant admitted this on cross-examination. As to summer visitation, appellee agreed that she received a letter from appellant proposing the weeks he wanted for summer visitation. She also testified that in response, she and her attorney made a counterproposal regarding the weeks for visitation and never heard back from appellant.

{¶20} The visitation order at issue for determining contempt grants appellee visitation in accordance with the court's Standard In-State Parenting Time Schedule attached as Exhibit A. The exhibit, however, is not attached. The order, therefore, provides no mandate as to when appellee was to get his extra day of visitation or summer visitation.

{¶21} In ruling upon a contempt motion, "the first step is to 'look to the text of the order to determine whether it is clear.' [*United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir.2005)]. 'The test is whether the putative contemnor is "able to ascertain from the four corners of the order precisely what acts are forbidden."' *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir.2002) * * *. However, this is not an exercise in the abstract; the 'four corners' rule grounds the analysis to determine whether 'the words of the court's order have clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based.*' *Saccoccia*, 433 F.3d at 28 (emphasis in original) * * *. 'The purpose of this "four corners" rule is to assist the potential contemnor by narrowly cabining the circumstances in which contempt may be found.' *Id.* at 28. It is because '[t]he consequences that attend the violation of a court order are potentially dire … [that] courts must 'read court decrees to mean rather precisely what they say.' [*Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir.1991)]." *UTGR, Inc. v. Mutuel/Gaming Clerks Union of Rhode Island*, D. Rhode Island No. CA09-046 S, 2010 WL 231122, *2 (Jan.12,

6

2010).

{¶22} Appellee's obligations were limited to the express language contained in the judgment itself. Under that judgment, appellee is required to afford appellant parenting time with the child, and must drop off and pick-up the child at Lynne Benek's residence. There is no language, however, granting appellant schedule priority over appellee's schedule. Her counterproposal does not constitute contempt nor does appellant's failure to respond.

{¶23} In challenging appellee's credibility, appellant emphasizes that his mother, Benek, testified that she sent appellee a text concerning the extra day of visitation, and appellee did not respond. During her testimony, though, appellee denied receiving the text, and Benek could not produce a written copy of the alleged text. Before this court, appellant has submitted an affidavit from Benek in which she provides the content of a "text" exchange she allegedly had with appellee about Christmas visitation to bolster Benek's trial testimony that she would text appellee in relation to visitation. However, that affidavit was not before the trial court and, therefore, cannot be considered. *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

{¶24} "A reviewing court shall not assert its judgment over that of a trier of fact in areas of credibility and veracity of evidence and witnesses." *Avakian v. Avakian*, 11th Dist. Portage No. 2014-P-0036, 2015-Ohio-2299, ¶28, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. Appellee's testimony does not have inherent inconsistencies rendering it unbelievable. Therefore, appellant has not shown that the trial court erred in finding her testimony more credible. Moreover, her testimony supports the finding that the lack of compliance with the controlling visitation orders was not due to her, but rater appellant's failure to communicate.

7

{¶25} As previously noted, the trial court concluded that, appellee had "technically" violated the prior court order. Appellee, however, did not violate the visitation orders, technically or otherwise. The denial of the contempt motion is affirmed.

{¶26} For this reason, appellant's first assignment lacks merit.

{¶27} Appellant's last two assignments address related issues, and will be considered together. Under the second assignment, appellant argues that the trial court erred in finding no change of circumstances because appellee has engaged in a pattern of behavior that is detrimental to his relationship with E.C. Under the third assignment, he contends that the evidence supports a finding that he is psychologically fit to care for E.C.

{¶28} Regarding change of custody, R.C. 3109.04(E)(1)(a) provides:

{¶29} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶30} "* * *

{¶31} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change in environment to the child."

{¶32} "The statute sets forth a two-step process for deciding motions to modify

8

child custody. The threshold issue/step is whether the circumstances of the child or the residential parent have changed. * * * Given that the term 'change of circumstances' is not statutorily defined, case law states that 'the phrase is intended to represent an event, occurrence, or situation which has a material and adverse effect upon a child.' * * * To constitute a proper basis for reallocating parental rights, the change of circumstances cannot be slight or inconsequential, but must be of substance. * * *." *In the Matter of G.M.*, 11th Dist. Trumbull No. 2016-T-0027, 2017-Ohio-8144, 98 N.E.3d 795 ¶19.

**{¶33}** In maintaining that appellee was harming his relationship with E.C., appellant refers to two situations. The first involves visitation on E.C.'s birthday in 2017. That year, her birthday fell on a Tuesday when appellant generally has visitation. The order, however, specifically provides for appellee to have E.C. on her birthday in 2017. Appellant believed he was, therefore, not entitled to visitation at all, but surmised that appellee would take E.C. to the place of exchange in order to make E.C. believe he did not want to see her. Appellant, therefore, sent his mother to the exchange location in case appellee brought E.C. for exchange, and appellee was there waiting.

**{¶34}** In response, appellee testified that, under her reading of the visitation order, appellant was entitled to see E.C. for four hours on her birthday, even when it was appellee's turn to have E.C. for the majority of the day. As a result, appellee believed she was complying with the visitation order in bringing E.C. to the exchange location. To this extent, she was not trying to harm appellant's relationship with E.C., and any misunderstanding was due to the parties' failure to communicate.

**{¶35}** The second situation occurred when appellant was returning E.C. following visitation. Appellant testified that, after E.C. got out of his car, she tried to open the back-passenger door of appellee's vehicle, but was unable to do so because the door was

9

locked. Appellee's father then exited the vehicle, escorted E.C. to the driver's side, and helped her into the back seat. Appellant further testified that this shows how petty appellee is, in that she would not allow E.C. to get into the vehicle by herself.

{¶36} Appellee testified that E.C. needed help getting into her vehicle because it is higher off the ground than most automobiles. Nevertheless, appellant fails to explain how this rises to the crest of a material adverse effect.

{¶37} Last, appellant asserts that, in deciding whether he established change of circumstances, this court should consider previous incidents that he cited in his prior contempt motions. However, they were all known to the court before the prior decrees were issued.

{¶38} Appellant's second assignment is without merit.

{¶39} In light of this, appellant's third assignment regarding fitness is moot.

{¶40} The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.


_____


DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶41} I respectfully dissent and would reverse the decision of the lower court.

{¶42} As the majority acknowledges, "[a] finding of contempt must be made even if the party did not intentionally disregard a court order; i.e., the fact that a party acted

10

innocently is not a valid defense to a contempt claim." (Citations omitted.) *In re G.M.*, 11th Dist. Trumbull No. 2016-T-0092, 2017-Ohio-8145, ¶ 17; *Pugh v. Pugh*, 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984) ("proof of purposeful, willing or intentional violation of a court order is *not* a prerequisite to a finding of contempt"); *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph three of the syllabus ("the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt").

{¶43} Contrary to this well-established tenet of contempt jurisprudence, the lower court failed to hold the appellee (mother) in contempt, finding that, although she "may have been in technical contempt regarding father's summer companionship," the "contempt was neither willful nor wanton." The majority circumvents the lower court's misapplication of a willful and wanton standard to contempt proceedings by concluding that the appellee did not even violate the court's visitation orders, "technically or otherwise." *Supra* at ¶ 25.

{¶44} More than merely technical, the appellee's violation of the court order regarding the appellant's (father's) summer visitation was ***blatant*** and merited a finding of contempt.

{¶45} The uncontradicted testimony before the lower court was that the appellee deprived the appellant of four weeks of court-ordered parenting time during the summer of 2017. Appellant submitted his request for summer visitation pursuant to a Judgment Entry for parenting time issued on June 19, 2017. The appellee admits that she, as well as her attorney, received the request. Rather than allow the visitation, appellee, through counsel, submitted "a different proposed schedule for the rest of the summer."

{¶46} Submitting different proposed schedules does not comply with the lower

court's visitation order, nor does it provide an adequate justification for denying the appellant summer visitation. *See* Portage County Standard In-State Parenting Time Schedule in re Summer Break ("[t]he nonresidential parent's schedule shall have priority over the residential parent's schedule"). Appellee claimed that she tried to work it out, but there was nothing to work out. Appellant was entitled to summer visitation and his schedule had priority. Appellee's obligation was to comply with the visitation order, yet she admits appellant received no summer visitation. The suggestion that this duty was suspended by the communication of a "counterproposal as regarding the weeks for visitation" only encourages the abuse of an already much-abused process. The trial court judge succinctly stated the situation: "The [appellee's] testimony was he didn't get any summer visitation. There were five weeks left and he didn't get any."

{¶47} The majority concludes not only that there was no contempt, but that there was no visitation schedule. According to the majority, the appellee was only under obligation "to afford appellant parenting time with the child." *Supra* at ¶ 22. Since the court's Entry contained "no language" regarding what the schedule of parenting time was, appellee could not be found to have violated the schedule. Such a position is violative of both the court's Entry and common sense. The Entry provides that the appellant "shall have parenting time pursuant to this Court's Standard In-State Parenting Time Schedule attached hereto as Exhibit 'A.'" The fact that this Schedule was not or is no longer attached to the court's Entry is immaterial. The Standard Parenting Time Schedule is incorporated into the Local Rules for the domestic relations division and expressly provides that the "nonresidential parent's schedule shall have priority over the residential parent's schedule." Local Rule 19(D); R.C. 3109.051(F)(2) ("[o]n or before July 1, 1991, each court of common pleas, by rule, shall adopt standard parenting time guidelines").

12

These Rules are binding on the parties before the court. The court granted appellant summer visitation and "he didn't get any."

**{¶48}** Appellee's conduct in disregarding court orders and denying appellant visitation has been a pattern during the course of these proceedings and should not be further indulged. *See Cain v. Cain*, 11th Dist. Portage No. 2016-P-0011, 2017-Ohio-708, ¶ 46 (Grendell, J., dissenting) ("[t]he evidence in the record demonstrates the mother has disregarded the domestic relations court's orders, violated the father's visitation rights, and exploited unsubstantiated abuse allegations in order to compromise the child's relationship with her father and her father's family").

**{¶49}** For the foregoing reasons, I respectfully dissent and would reverse the lower court's ruling that appellee was not in contempt of court.