[Cite as *Schneider v. Schneider*, 2021-Ohio-1058.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| RONALD D. SCHNEIDER, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NOS.  2020-A-0007** |
| | | **2020-A-0015** |
| SHANNON R. SCHNEIDER n.k.a. DAUGHERTY, | : | |
| | : | |
| Defendant-Appellee. | | |

Civil Appeals from the Ashtabula County Court of Common Pleas.
Case No. 2014 DR 00098.

Judgment: Affirmed.

*Luke P. Gallagher*, Law Office of Luke P. Gallagher, LLC, 354 Main Street, Conneaut, OH 44030 (For Plaintiff-Appellant).

*William P. Bobulsky*, William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Defendant-Appellee).

MARY JANE TRAPP, P.J.

{¶1}   Appellant, Ronald D. Schneider ("Mr. Schneider"), appeals from two post-decree judgments from an underlying divorce action in the Ashtabula County Court of Common Pleas, which denied his motion to show cause against his former spouse, Shannon R. Schneider n.k.a. Daugherty ("Ms. Daugherty"), overruled his objections to the magistrate's decision, and found him in contempt of the parties' divorce decree.

{¶2}   Now on consolidated appeal, Mr. Schneider raises six assignments of error. Specifically, he argues that the trial court erred by failing to find Ms. Daugherty in

contempt of court for failing to (1) abide by the parenting time schedule; and (2) timely refinance the marital real estate; and by finding him in contempt of court for his failure to (3) pay the financial obligations of the parties' marital home; and (4) effectuate the transfer of Ms. Daugherty's portion of the Ameriprise retirement account. He further contends the trial court erred by (5) requiring him to deliver the personal property items listed on Joint Exhibit A, attached to the divorce decree; and (6) assigning values to the personal property and ordering him to either deliver the property or pay the amount equal to the value.

{¶3} After a review of the record and pertinent law, we find Mr. Schneider's assignments of error without merit. At the outset, we note Mr. Schneider failed to cite to case law or statutes in support of any of his six assignments of error, save for a few cursory, generic references to the nature of contempt proceedings. It is axiomatic that this failure, pursuant to App.R. 16(A)(7), constitutes grounds to disregard the assigned errors pursuant to App.R. 12(A)(2).

{¶4} Our review of the merits, however limited under these circumstances, reveals Mr. Schneider's assignments of error are without merit. The trial court did not abuse its discretion in failing to find Ms. Daugherty in contempt since Mr. Schneider did not submit any evidence that Ms. Daugherty interfered with the parties' shared parenting schedule per the divorce decree or of his inability to pay the mortgage on the residential property due to Ms. Daugherty's transfer of her interest in the residential property by limited warranty deed.

{¶5} We also cannot find the trial court abused its discretion in finding Mr. Schneider in contempt for failing to effectuate the transfer of Ameriprise funds pursuant to the divorce decree and the subsequent qualified domestic relations order ("QDRO"),

2

and that he failed to pay the mortgages on the residential property.  Nor did the trial court abuse its discretion in finding that Mr. Schneider is obligated to transfer Ms. Daugherty's agreed-upon personal property in Joint Exhibit A, attached to the divorce decree, and that if he cannot locate the property, he must pay the item's assigned value, if one was assigned.

{¶6}  The judgments of the Ashtabula County Court of Common Pleas are affirmed.

## Substantive and Procedural History

{¶7}  A final decree of divorce was granted to the parties on May 10, 2016.  The parties have two children from the marriage, "B.S.," a son, and his younger sister, "M.S.," both now emancipated.  M.S. was 15 years old at the time of the divorce decree.

{¶8}  Per the divorce decree, both parties agreed to shared parenting.  The decree specified that should a dispute arise regarding parenting time, Ms. Daugherty was to have companionship every Wednesday night and alternating weekends.

{¶9}  As for the parties' real estate, the final decree provided that Mr. Schneider retained the parties' residential marital property, located at 3460 N. County Line Road, Geneva, Ohio (the "residential property"), and Ms. Daugherty retained the commercial property, located at 6641 Chapel Road, Madison Township, Ohio (the "commercial property"), from which she runs her salon business, "Perfect Ten Nail & Hair Salon."  Mr. Schneider retained ownership of the residential property "subject to costs of possession," which included "any mortgage(s), real estate taxes, insurance and utilities."  Ms. Daugherty was to "convey her interest in the marital residence by Limited Warranty Deed forthwith."

3

{¶10} Ms. Daugherty was ordered to refinance the commercial property's mortgage no later than 12 months after the date of the final hearing. "At such time as [Ms. Daugherty] completes the refinance of the mortgage, [Mr. Schneider] shall convey his interest in the commercial property to Ms. Daugherty by Limited Warranty Deed."

{¶11} The decree further ordered that Ms. Daugherty "shall receive the items of personal property listed on Joint Exhibit A," which was attached to the decree, and identified Ms. Daugherty's personal property that was in Mr. Schneider's possession.

### Motions to Show Cause

{¶12} Both parties filed motions to show cause for failing to abide by the terms of the final decree.

{¶13} Ms. Daugherty filed her motion to show cause in June 2018, alleging that Mr. Schneider failed to abide by the terms of the final divorce decree by failing to (1) provide the limited warranty deed to the commercial property as ordered; (2) pay the financial obligations of the residential property; (3) effectuate the transfer of $14,656.53 to Ms. Daugherty from his Ameriprise Brokerage Account pursuant to the QDRO as required by the decree; and (4) provide her with all the items of personal property listed on Joint Exhibit A, attached to the decree.

{¶14} Mr. Schneider filed his motion to show cause shortly after M.S. turned 18, in October 2018. He alleged that Ms. Daugherty interfered with his parental rights regarding M.S.'s parenting time and failed to "timely transfer the real estate and remove [Mr. Schneider] from any liability thereon."

{¶15} The motions were heard by the magistrate in November 2018, in which Mr. Schneider, Ms. Daugherty, and both of their children testified. Ms. Daugherty filed a post-hearing memorandum to which she attached a 2015 appraisal of the parties' personal

4

property inventory, with highlighting of the items Ms. Daugherty never received. A copy was also provided to Mr. Schneider's counsel. Mr. Schneider, in turn, filed a closing argument.

### *The Magistrate's Decision*

{¶16} The magistrate issued a decision overruling Mr. Schneider's motion to show cause and finding Ms. Daugherty's motion to have merit. More specifically, the magistrate found Mr. Schneider in contempt of court for failing to pay the mortgage on the residential property and for failing to effectuate the transfer of the Ameriprise funds per the QDRO. Purge conditions were set. Mr. Schneider was ordered to fulfill his obligation pursuant to the divorce decree to make Ms. Daugherty's personal property in his possession available to her or to pay her the items' value, if value was assigned.

### *Shared Parenting Time*

{¶17} As to the parties' shared parenting of M.S., the magistrate found that prior to turning 18, she continued to go between both parents' homes freely with the use of a vehicle provided by Ms. Daugherty. M.S. spent most of her time from August 2017 to July 2018 with Mr. Schneider, at which time they had a disagreement. Since then, she has been living exclusively with her mother.

{¶18} Mr. Schneider filed police reports relative to the parenting time issue, but neither party filed a motion to show cause for failing to abide by the parenting schedule per the divorce decree prior to M.S.'s 18th birthday.

{¶19} M.S. testified that a friend of her brother suffered from a drug overdose in Mr. Schneider's home in July 2018, after which she went to live with her mother. She also testified that her older brother had a drug problem. She alleged that Mr. Schneider was using marijuana and her brother was selling drugs.

5

{¶20} Mr. Schneider testified that M.S. left because he found a marijuana pipe in her room. He explained there was never really a parenting schedule because M.S. did not want one. Both he and B.S. denied selling drugs. B.S. corroborated the marijuana pipe incident. At the time of the July incident, B.S. was in drug rehabilitation for addiction to painkillers used after he broke his hand.

{¶21} The magistrate found M.S.'s parenting time at each home was unstructured and that the plan in the decree was never followed. The magistrate also found there was no credible evidence as to M.S.'s testimony of her possible marijuana use in her father's home. The magistrate also found no credible evidence that Ms. Daugherty kept M.S. from Mr. Schneider.

{¶22} The magistrate further found Mr. Schneider's attorneys (Mr. Schneider has changed counsel several times) never addressed the issue nor did Mr. Schneider ever take steps to enforce the decree.

{¶23} Finally, the magistrate found there was no "willful interference" by Ms. Daugherty with Mr. Schneider's parenting time.

### *Residential Property Foreclosures*

{¶24} The magistrate found no credible evidence supporting Mr. Schneider's second allegation that because Ms. Daugherty did not refinance and remove his name from the commercial property, his ability to refinance and avoid foreclosure of the residential property was affected.

{¶25} Ms. Daugherty had documents from the bank demonstrating that it was willing to refinance the commercial property but that it could not move forward until Mr. Schneider executed the deed. Thus, the parties were in a "stalemate," with Ms. Daugherty unable to refinance the commercial property and Mr. Schneider unwilling to

6

transfer the deed until she did so per the language of the divorce decree.  Likewise, Ms. Daugherty did not exchange her executed limited warranty deed for the residential property.  Mr. Schneider had three different attorneys involved through May 2018 without resolving the issue.

{¶26}  The magistrate did not find Ms. Daugherty in "willful contempt" regarding the terms of the transfer and refinance of the commercial property or that this transfer of the commercial property hindered Mr. Schneider's ability to pay for the mortgages associated with the residential property.  Mr. Schneider failed to support his claim with any evidence that he was unable to pay his mortgage on the residential property due to Ms. Daugherty's refusal to comply with the transfer of her interest in the residential property.

### Refusal to Transfer Commercial Property Deed

{¶27}  The magistrate found Mr. Schneider's actions in refusing to transfer the deed prior to the refinancing of the commercial property did not rise to contempt of court based on the language of the decree.  Thus, even though Ms. Daugherty could not refinance the property until Mr. Schneider transferred his interest, he was under no obligation per the divorce decree to do so until she refinanced the property.

### Failure to Pay Financial Obligations of Residential Property

{¶28}  Since the divorce decree, two foreclosures have been filed against the residential property.   The divorce decree has no requirement for removing Ms. Daugherty's name from the mortgage prior to her transfer of her interest in the property.

{¶29}  While Mr. Schneider claimed Ms. Daugherty's failure to transfer her interest somehow affected his ability to deal with the foreclosure, he presented no evidence to support this assertion, of his inability to pay the mortgage, or of the terms of the 2017

7

foreclosure dismissal. Mr. Schneider submitted a mortgage payment notice document dated before the divorce decree, which stated his monthly, interest-only mortgage payment of $601.81 would increase after July 1, 2016, to a monthly payment of $1,396.10. He also offered a document that indicated he owed $58,382.15 to reinstate the mortgage during the second foreclosure proceeding.

{¶30} The magistrate found that in 2017, Mr. Schneider entered into a forbearance agreement to dismiss the first foreclosure action against the residential property. Ms. Daugherty was a named party in that action. A second foreclosure complaint was filed in 2018, which again named Mr. Schneider and Ms. Daugherty as parties. The magistrate noted that after the dismissal of the 2017 foreclosure, Mr. Schneider again defaulted on his payments, which resulted in a second foreclosure and required a payment of $58,382.15 to reinstate the mortgage.

{¶31} The magistrate found Mr. Schneider in contempt of court for failing to pay the mortgages of the residential property.

### *Transfer of the QDRO*

{¶32} The magistrate reviewed that the QDRO had been prepared and filed on May 17, 2016, shortly after the divorce decree. Entered into evidence was correspondence to Mr. Schneider beginning in 2017 regarding Ms. Daugherty's inability to obtain the funds. She requested his assistance in filling out required forms and obtaining verification that the funds still existed. Mr. Schneider did not return the forms, testifying that he did not know if he had any correspondence regarding the account and that he had not seen any recent statements from the account but believed there were funds in the account.

8

{¶33} The magistrate noted that he withdrew funds from the account during the divorce. He also withdrew funds later in 2016 to pay the taxes on the withdrawal. There was no evidence offered that he attempted to cooperate in the transfer of the requested funds or that he attempted to provide any information about the account after being apprised of the problem.

{¶34} The magistrate found Mr. Schneider in willful contempt of court because the QDRO transfer ordered by the court in the final decree could not be effectuated without his cooperation.

### *Personal Property*

{¶35} Lastly, the magistrate reviewed Ms. Daugherty's claims regarding the personal property awarded to her in the final divorce decree. The decree contained no time limit to transfer the items or mechanism to effectuate her receipt of the listed items.

{¶36} Both parties and their children testified as to Ms. Daugherty's personal property. Ms. Daugherty testified that she did not receive any of the items, and she requested a judgment for the items' value. Mr. Schneider denied preventing Ms. Daugherty from retrieving her items. He testified that he sent some items with M.S. after the divorce and that M.S. took some of the items after entering his house without his permission. He further testified that Ms. Daugherty and her father had arrived with a truck and trailer and removed some of the items while the divorce was pending.

{¶37} M.S. denied transporting items between the houses and specifically denied returning to Mr. Schneider's house after July 2018. B.S., who resides with Mr. Schneider, testified that M.S. did return to the house, but only for her personal items. B.S. testified that Ms. Daugherty and her father had loaded a pickup truck and an open trailer with items during the divorce. He never witnessed Mr. Schneider refuse to give Ms. Daugherty

9

the items. B.S. also testified that the dining room set and hutch, one of the set of items Ms. Daugherty was claiming, were still in Mr. Schneider's home.

{¶38} The magistrate found the testimony of Mr. Schneider and B.S. unreliable because both testified that Ms. Daugherty removed property with her father prior to the date of the final hearing. The magistrate noted Mr. Schneider agreed to the items on the list at the final hearing and acknowledged their location at the residential property at that time, which was after the alleged removal. Thus, the magistrate found that the property listed on Joint Exhibit A attached to the decree existed at the time of the decree and was not in Ms. Daugherty's possession at the time of the decree.

{¶39} The magistrate found neither party credible as to why the property on Joint Exhibit A is not in Ms. Daugherty's possession, nor did she find the children's testimony corroborative of either party's testimony. While the magistrate did not find Mr. Schneider in willful contempt of court for failing to provide the property, the magistrate found he did have an obligation under the decree to make it available to Ms. Daugherty. Thus, the magistrate determined that if Mr. Schneider did not have the item of property, he should be ordered to pay the value, if the value had been established.

{¶40} The magistrate set purge conditions for Mr. Schneider. He was ordered to pay the financial obligations on the residential property or to ensure Ms. Daugherty had no liability on those obligations, including the foreclosures. Further, he was ordered to cooperate fully to determine whether the Ameriprise account still has funds and to effectuate the QDRO or make a $14,656.53 payment to satisfy that obligation. Finally, he was ordered to fulfill his obligation per the divorce decree to make arrangements to deliver all items listed on Joint Exhibit A or pay the appraised value of each item. If no value was listed, then no payment was required.

10

{¶41} Mr. Schneider filed objections and, subsequently, amended objections to the magistrate's decision finding him in contempt of court. He further objected to the magistrate's purge conditions, citing impossibility to complete.

### The Trial Court's Judgments

{¶42} The trial court reviewed Mr. Schneider's objections, the motions to show cause, the hearing transcripts, and the magistrate's decision. The court overruled the objections and adopted and approved the magistrate's decision. The court then gave the parties thirty days to submit a judgment entry or show cause to why the judgment entry was not submitted.

{¶43} Accordingly, the trial court issued the submitted judgment entry, which adopted and approved the magistrate's decision; dismissed Mr. Schneider's motion to show cause; found Mr. Schneider in willful contempt for failing to pay the mortgages on the residential property and failing to effectuate the transfer of the Ameriprise funds per the QDRO order; and set forth conditions for Mr. Schneider to purge himself of contempt.

{¶44} Mr. Schneider appeals both judgments, raising six assignments of error:

{¶45} "[1.] Appellant alleges that the trial court abused its discretion in failing to find Defendant in contempt of court regarding the parenting time schedule.

{¶46} "[2.] Appellant alleges that the trial court failed to follow procedure when the presiding judge issued a judgment entry without hearing evidence.

{¶47} "[3.] Appellant alleges that the trial court abused its discretion in finding him in contempt of court for failure to pay the financial obligations of the property known as 3460 North County Line Road.

11

**{¶48}** "[4.] Appellant alleges that the trial court abused its discretion in finding him in contempt of court for failure to effectuate the transfer of the portion of the Ameriprise account.

**{¶49}** "[5.] Appellant alleges that the trial court abused its discretion in requiring him to deliver the items listed in Joint Exhibit "A", that was attached to the Divorce Decree.

**{¶50}** "[6.] Appellant alleges that the trial court abused its discretion when assigning values to the personal property that it is requiring Plaintiff to give to Defendant, or to pay the amount of said value."

### Standard of Review

**{¶51}** We review both a judgment of the trial court adopting the decision of its magistrate and contempt orders for an abuse of discretion. *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29; *Keen v. Wilson*, 2019-Ohio-2398, 139 N.E.3d 411, ¶ 64 (11th Dist.).

**{¶52}** The term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶ 30. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶53}** Furthermore, "[a] reviewing court shall not assert its judgment over that of a trier of fact in areas of credibility and veracity of evidence and witnesses." *Avakian v. Avakian*, 11th Dist. Portage No. 2014-P-0036, 2015-Ohio-2299, ¶ 28.

**{¶54}** "Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. *State v. Flinn* (1982), 7 Ohio App.3d 294, * * * 455 N.E.2d 691. Indirect

12

contempt may include the disobedience of, or resistance to, a lawful order, judgment, or command of a court officer. *See* R.C. 2705.02." (Footnote omitted.) *Dozer v. Dozer*, 88 Ohio App.3d 296, 302, 623 N.E.2d 1272 (4th Dist.1993).

{¶55} "Proof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt." *Pugh v. Pugh*, 15 Ohio St.3d 136, 472 N.E.2d 1085 (1984), paragraph one of the syllabus; *Cain v. Cain*, 11th Dist. Portage No. 2017-P-0084, 2019-Ohio-184, ¶ 17. "'It is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result.'" *Pugh* at 140, quoting *Pedone v. Pedone*, 11 Ohio App.3d 164, 165, 463 N.E.2d 656 (8th Dist.1983).

{¶56} Moreover, a party can only be held in contempt of court for failing to comply with the language the court employed in the four corners of the applicable court order. *Cain* at ¶ 21. Especially in contempt cases, court decrees must be restricted to what they say, and if the text of an order is unclear, a contempt finding for failure to comply is improper. *Id.*

{¶57} The party moving to hold another in civil contempt of court has the burden to show by clear and convincing evidence the existence of a valid court order and the other's noncompliance. *Carroll v. Detty*, 113 Ohio App.3d 708, 711, 681 N.E.2d 1383 (4th Dist.1996). Clear and convincing evidence is evidence that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331, 708 N.E.2d 193 (1999), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

13

## The Magistrate's Decision

**{¶58}** At the outset, we must clarify that the determinative factor in a contempt proceeding is whether there has been a violation of a court order. It is the determination that there has been a violation that forms the basis for a finding of contempt, not a determination as to whether it is "willful." Indeed, "it is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result." *Cain* at ¶ 17. A finding of contempt must be made even if the party did not intentionally disregard a court order; i.e., the fact that a party acted innocently is not a valid defense to a contempt claim. *Id.*

**{¶59}** Any possibility of error, however, is harmless as it relates to the assignments of error in this case.

## App.R. 16(A)(7)

**{¶60}** A review of Mr. Schneider's appellate brief reveals he has failed to cite to any case law or statutes in all six of his assignments of error, save a few cursory, generic references to the nature of contempt proceedings

**{¶61}** Pursuant to App.R. 16(A)(7), an appellant's brief must contain "[a]n argument containing the contentions of the appellant *with respect to each assignment of error presented for review* and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added.)

**{¶62}** It is axiomatic that the failure to cite case law or statutes in support of an argument, as required by App.R. 16(A)(7), constitutes grounds to disregard the assigned error pursuant to App.R. 12(A)(2). *South Russell v. Upchurch*, 11th Dist. Geauga Nos. 2001-G-2395 & 2001-G-2396, 2003-Ohio-2099, ¶ 9.

14

{¶63}  Nevertheless, we will address Mr. Schneider's arguments.

**Shared Parenting Time**

{¶64}  In his first assignment of error, Mr. Schneider contends the trial court erred in failing to find Ms. Daugherty in contempt for not abiding by shared parenting time ordered by the divorce decree.

{¶65}  As our review of the facts indicate, the testimony supports each of the findings in the magistrate's decision.  Neither parent followed the parenting time schedule pursuant to the divorce decree, and M.S. was not kept from either parent; she chose to live with Ms. Daugherty.  Further, Mr. Schneider did not attempt to file a motion to show cause or have his attorneys address the issue in correspondence during the time he alleges he was deprived of parenting time.  In fact, Mr. Schneider did not file his motion to show cause until after M.S. was emancipated.

{¶66}  We cannot say under these circumstances that the trial court erred in adopting the magistrate's conclusion that Ms. Daugherty should not be held in contempt for failing to abide by the shared parenting schedule set forth in the divorce decree.

{¶67}  Mr. Schneider's first assignment of error is without merit.

**Residential Property Refinancing and Foreclosures**

{¶68}  In his second assignment of error, Mr. Schneider contends the trial court erred in failing to find Ms. Daugherty in contempt for thwarting his ability to refinance the residential property and avoid foreclosure.  In his third assignment of error, Mr. Schneider contends the trial court erred in finding him in contempt for failing to pay the financial obligations of the residential property.  As these assignments of error are interrelated, we will address them together.

15

{¶69} Per the terms of the divorce decree, Ms. Daugherty was ordered to convey her interest in the residential property by limited warranty deed "forthwith," and Mr. Schneider was responsible for the "costs of possession," including the mortgages on the property. The property fell into foreclosure two times due to Mr. Schneider's default in making the mortgage payments, with Ms. Daugherty a named party in both actions.

{¶70} While Mr. Schneider claimed that Ms. Daugherty's refusal to transfer the residential property "forthwith" affected his ability to deal with the foreclosure on the residential property, he submitted no evidence to support this claim. As the magistrate noted, Mr. Schneider was able to reach a forbearance agreement without a deed in the first foreclosure. After the first foreclosure agreement, he again defaulted on the mortgage payments, resulting in a second foreclosure. Mr. Schneider also failed to submit evidence of his inability to pay or the terms of the 2017 foreclosure dismissal.

{¶71} Under these circumstances, we cannot say the trial court abused its discretion in adopting the magistrate's decision that Ms. Daugherty was not in contempt for hindering Mr. Schneider's ability to refinance the residential property and avoid foreclosure or in holding him in contempt for failing to pay the mortgages associated with the residential property.

{¶72} Mr. Schneider's second and third assignments of error are without merit.

**QDRO – The Ameriprise Fund**

{¶73} In his fourth assignment of error, Mr. Schneider contends that the trial court abused its discretion in finding him in contempt of court for failing to effectuate the transfer of the Ameriprise funds to Ms. Daugherty per the QDRO and the divorce decree.

{¶74} We find no abuse of discretion in the trial court's adoption of the magistrate's decision finding Mr. Schneider in willful contempt because the transfer ordered in the

16

decree could not and cannot be effectuated without his cooperation as the owner of the account. Ms. Daugherty made repeated attempts to transfer the Ameriprise funds, but Mr. Schneider repeatedly refused to cooperate or inquire further into the funds of the account. Indeed, at the time of the hearing, he was still uncertain as to the account's balance. His refusal to effectuate the transfer of the Ameriprise funds is in blatant defiance of the divorce decree and QDRO, and he did not submit any evidence to the contrary.

{¶75} The party bringing a show cause motion has the burden of proving that a breach occurred by clear and convincing evidence. *Winebrenner v. Winebrenner*, 11th Dist. Lake No. 96-L-033, 1996 WL 761996, *3 (Dec. 6, 1996). A prima facie showing of civil contempt exists when the moving party produces evidence of nonpayment according to the terms of the divorce decree; then the burden shifts to the alleged contemnor to establish any defense he may have for nonpayment. *Morford v. Morford*, 85 Ohio App.3d 50, 55, 619 N.E.2d 71 (4th Dist.1993); *Cardina v. Cardina*, 11th Dist. Lake No. 2002-L-070, 2003-Ohio-4600, ¶ 11.

{¶76} Mr. Schneider's fourth assignment of error is without merit.

**Personal Property**

{¶77} In his fifth and sixth assignments of error, Mr. Schneider contends the trial court abused its discretion in ordering him to deliver the items in Joint Exhibit A, attached to the divorce decree, and by assigning value to the personal property and requiring him to pay the assigned value if the item cannot be found.

{¶78} While the trial court did not find Mr. Schneider in contempt, it found that he had an obligation under the decree to make the personal property available to Ms.

17

Daugherty, and if the property could not be found, then to pay the item's value, if the value has been established.

{¶79} As our review of the facts indicated, Mr. Schneider agreed to the items listed on Joint Exhibit A and acknowledged their location at the residential property at the time of the divorce decree. The magistrate compared Joint Exhibit A with an inventory and appraisal that Ms. Daugherty submitted in a post-hearing memorandum filed on December 17, 2018, which indicated a lot of the contested property was still in Mr. Schneider's possession.

{¶80} The magistrate's decision contained a list with the corresponding inventory number and value. If the notation "not on inventory appears," then the value was as testified by the parties, and if the parties did not agree on the value, then the magistrate found Ms. Daugherty's value should be used. If a question mark appeared, then the item could not be readily identified from the inventory, or no value was on the inventory or presented in testimony.

{¶81} While Mr. Schneider objected to the magistrate's findings, besides his testimony at the hearing, which the magistrate found not credible, he never submitted any contradictory evidence as to the items' values. The inventory appraisal attached to Ms. Daugherty's post-hearing memorandum was done in 2015 during the divorce proceedings by both parties.

{¶82} Without any case law or statutes in support of his bare argument, we cannot say that the trial court abused its discretion in ordering him to either make Ms. Daugherty's property available to her or pay its assigned value per the divorce decree.

{¶83} Mr. Schneider's sixth assignment of error is without merit.

{¶84} The judgments of the Ashtabula County Court of Common Pleas are affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.