[Cite as *In re Robinson v. Rehfus*, 2022-Ohio-4679.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

IN THE MATTER OF:

R.R.

WILLIAM E. ROBINSON III,

Plaintiff-Appellee,

v.

KIMBERLY REHFUS,

Defendant-Appellant.

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CA 0958**

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

**JUDGMENT:**
Affirmed.

*No Brief Filed* by Plaintiff-Appellee and

*Kimberly K. Rehfus,* pro se, 335 N Cline Street, Magnolia, Ohio 44643 Defendant-Appellant.

Dated:  December 22, 2022

**Robb, J.**

{¶1} Appellant Kimberly Rehfus (the mother) appeals the decision of the Carroll County Common Pleas Court, Juvenile Division. She contends the court erred in denying her motion to modify parental rights and her motion to hold Appellee William E. Robinson III (the father) in contempt. For the following reasons, the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} Pending various motions on the child's custody, the trial court granted the father temporary sole custody of the parties' four-year-old child and provided the mother standard visitation. (9/22/14 J.E.). Subsequently, the court memorialized an agreement whereby the father was named the residential and custodial parent. The mother was provided companionship on alternating weekends (Friday at 6:00 p.m. until Monday at 8:00 p.m.) and Wednesday evenings. (7/22/15 J.E.).

{¶3} In March 2020, the mother filed a pro se motion seeking to modify her companionship schedule, including a later start time on Fridays, an earlier end time on Mondays during the school year, and an elimination of Wednesdays. She also wished to alter the school break schedule. In June 2020, she amended her motion, indicating she wanted custody. A guardian ad litem was appointed upon request. The mother fired her attorney on the eve of trial.

{¶4} On May 7, 2021, the mother filed a pro se motion to modify parental rights seeking sole custody and a motion asking to hold the father in contempt. She withdrew her prior modification motion. (5/17/21 J.E.). On July 1, 2021, the mother's new attorney filed an amended motion for modification of parental rights, which organized the general legal arguments and attached a notarized affidavit incorporating the factual allegations she listed in an exhibit.

{¶5} In October 2021, the trial court conducted an in camera interview of the child and commenced trial on the mother's custody and contempt motions. While the matter was continued for a further hearing date, the mother filed a second contempt motion

against the father on January 27, 2022. After a further hearing on February 1, 2022, the mother voluntarily dismissed her second contempt motion. (3/1/22 Dismissal).

{¶6} On March 2, 2022, the trial court issued a decision denying the mother's May 7, 2021 motions for custody and contempt. Although the court opined a change in circumstances occurred, the court did not find a modification of custody would be in the eleven-year-old child's best interest. The court made changes to the companionship schedule, providing the mother with alternating weekends from Friday after school through Sunday at 8:00 p.m. and Wednesdays from after school until 8:00 p.m. with alternating weeks during summer break.

{¶7} The mother filed a timely notice of appeal. She filed motions in the trial court and in this court asking for a transcript at state expense. The trial court denied the request and a reconsideration request, pointing out this was a private custody matter and not a permanent custody proceeding involving the termination of parental rights. (6/1/22 J.E. & 6/15/22 J.E.). This court likewise denied the request. (7/14/22 J.E.). The mother's brief was filed without obtaining a transcript. The father did not submit a response brief.

BRIEFING ISSUES

{¶8} The initial pages in the mother's pro se brief list four assignments of error and four issues presented for review, each corresponding to an assignment of error. Her argument section sets forth a general assignment of error without analyzing the four assignments of error listed at the beginning of her brief. The general assignment of error and accompanying argument section contest the weight of the evidence and cite the due process right of a parent to raise a child. Before addressing the mother's arguments, we review some important general principles guiding our review.

{¶9} "According to App.R. 12(A)(2), the appellate court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *In the Matter of M.L.S.*, 7th Dist. Harrison No. 21 HA 0010, 2022-Ohio-2195, ¶ 27, quoting *State v. Jones*, 7th Dist. Mahoning No. 06 MA 109, 2008-Ohio-1541, ¶ 61. App.R. 16 requires a statement of the assignments of error, a statement of the corresponding issues presented for review, and thereafter an "argument containing the contentions of the appellant with respect to each

assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(3),(4),(7).

{¶10} In order to cite to the record and point to various contested events from the trial, a transcript or a valid substitute is required. App.R. 9(B)-(D). It was Appellant's obligation to order the transcript and ensure the proceedings necessary for inclusion in the record were properly transcribed. App.R. 9(B)(1),(3). Various arguments about what occurred at trial are barred without a transcript. For instance, "If the appellant intends to present an assignment of error on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of proceedings that includes all evidence relevant to the findings or conclusion." App.R. 9(B)(4). Allegations in a party's motion are not evidence merely because they are in the form of an affidavit and file-stamped.

{¶11} The appendix to the mother's brief contains some non-objectionable documents, such as the judgment entry on appeal, two state laws, and the court's standard companionship schedule (which the court attached to its September 22, 2014 temporary custody order). See App.R. 16(E). Other items appended to the mother's brief are part of the record but have commentary added (such as parts of the docket and her second contempt motion). We note the appendix is not the proper place for introducing arguments on appeal. A few of the items in the appendix may have been trial exhibits. However, trial exhibits are to be submitted on appeal as part of a properly filed transcript, which memorializes their introduction and admission into evidence. App.R. 9(B)(6)(f)-(g). Without the transcript, the context and related testimony are lacking. Moreover, the appendix contains additional documents that were not exhibits at trial, including a text message about Christmas Day companionship, communications to and from attorneys, a discharge summary, and a police report.

{¶12} "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." State v. Ishmail, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Accordingly, a party cannot add material to the record on appeal or claim attached items were presented at trial without obtaining a transcript or an App.R. 9

alternative. *See, e.g., In the Matter of M.L.S.*, 7th Dist. Harrison No. 21 HA 0010, 2022-Ohio-2195, ¶ 30 (evidentiary documents in appendix attached to pro se appellant's brief cannot be utilized on appeal unless the record shows they were admitted as evidence).

ASSIGNMENT OF ERROR ONE

{¶13} Appellant's first assignment of error contends:

"The trial court erred when it did not consider the wishes of the child when the child stated on 2 separate interviews with the GAL and an in-camera interview he would like equal time with each parent."

{¶14} The mother emphasizes the child told the court he would like to spend equal time with each parent while in chambers on October 14, 2021. The mother points out the child was over 11 years of age at the time of the court's in camera interview. She notes the child made similar statements to the guardian ad litem. The mother also makes factual allegations about the father's reaction to the child's request; however, these are claims that must be supported by a transcript and rest within the trial court's province as the fact-finder.

{¶15} In evaluating a request to modify parental rights and responsibilities, one of the best interest factors the trial court shall consider is the child's wishes and concerns on the allocation of parental rights and responsibilities as expressed to the court in camera. R.C. 3109.04(F)(1)(b). In the March 2, 2022 judgment entry, the court specifically quoted this subdivision, listed the date of the in camera interview, and recited the child's statement about desiring equal time.

{¶16} Accordingly and contrary to the mother's contention, the trial court did consider the wishes of the child. In fact, the court then observed the following: "However, upon further questioning, it became apparent that [the child] is very happy with the way things are working now. He enjoys the time he has with his Father and also enjoys the time he has with his Mother 'as it is now.' He feels very much caught in the middle * * * It was obvious that the situation causes [the child] some very much unneeded stress and anxiety." (3/2/22 J.E.). This demonstrates the child's initial statement was then tempered by the child's further disclosures to the court.

{¶17} Moreover, the best interest factor relating to the child's wishes is merely one of the statutory factors, and the statute's list is not exclusive. R.C. 3109.04(F)(1)(b) ("all

relevant factors, including, but not limited to" the ones listed). The court's analysis of the factors is addressed in our final section reviewing the mother's general assignment of error on the weight of the evidence in denying her motion to modify custody. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

{¶18} The mother's second assignment of error alleges:

"The trial court erred when it did [not] enforce or follow Exhibit A Standard Child Companionship Schedule that is adopted in their court and was given to mother by her attorney in 2015."

{¶19} The mother argues the trial court should have held the father in contempt for denying her companionship time. Her May 7, 2021 contempt motion was heard at the same time as her modification motion. (3/2/22 J.E.). In this contempt motion, she alleged interference with companionship time ordered by the court in 2015 (presumably referring to the July 21, 2015 judgment naming the father residential parent). She alleged the father: caused the child to be late for visits with her; denied the mother companionship time, such as for Spring or Christmas break; failed to take the child for medical or dental visits; omitted the mother's information in the child's medical records; failed to notify the mother when the child went to counseling; and alienated the child from the mother, such as by allowing the child to call the step-mother "mom."

{¶20} In overruling this contempt motion, the court recognized the parties had disagreements on who would drive the child or what time visitation would occur. The court also explained many of the mother's contempt allegations were not based on specific orders in the July 21, 2015 judgment. As the court pointed out, this judgment specified the father was the residential parent who was solely responsible for all school and medical decisions and did not require the father to notify the mother of counseling. It was also observed the July 21, 2015 judgment did not provide extra time during Christmas break or Spring break (besides the holidays listed).

{¶21} The 2015 judgment listed the days of special meaning, which it defined as those listed in the standard order, but the court then allocated each specific holiday (and summer break). The court then allocated alternating years for New Year's Day and gave Christmas Eve to the mother and Christmas Day to the father. The standard order was

not incorporated into or attached to the July 21, 2015 judgment as it had been for the temporary custody order of September 22, 2014. Notably, the 2015 judgment provided the mother with a longer weekend than standard companionship.

**{¶22}** The movant's burden of proof upon a civil contempt motion is clear and convincing evidence. *Facemyer v. Facemyer*, 7th Dist. Mahoning No. 2019 MA 109, 2021-Ohio-48, ¶ 1, citing *Ferguson v. Boron*, 7th Dist. Columbiana No. 15 CO 0030, 2018-Ohio-69, ¶ 14. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). The burden is "more than a mere preponderance" of the evidence. *Id*

**{¶23}** "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." *Denovchek v. Board of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988). "The court that issued the order sought to be enforced is in the best position to determine if that order has been disobeyed." *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 252, 648 N.E.2d 1355 (1995).

**{¶24}** A court is not required to hold a person in contempt for an alleged violation of an order if there is a concern a prior entry was unclear. *Schneider v. Schneider*, 11th Dist. Ashtabula No. 2020-A-0007, 2021-Ohio-1058, ¶ 56 ("if the text of an order is unclear, a contempt finding for failure to comply is improper"), citing *Cain v. Cain*, 11th Dist. Portage No. 2017-P-0084, 2019-Ohio-184, ¶ 20-21 (explaining the court order must have clearly and unambiguously addressed the specific acts alleged to be contempt). Notably, the mother took no issue with Christmas break or spring break in the years after the 2015 entry. In fact, her March 2020 pro se motion asking to modify companionship time acknowledged the 2015 court order did not split those breaks, as she asked the court to change the order to provide her with such time.

**{¶25}** Moreover, the trial court observed: "While Father has failed to accommodate the Mother's numerous requests relative to visitation, he has not willfully denied her parenting time." Generally, the weighing of the evidence and the assignment of credibility to the witnesses are matters best left to the factfinder. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). A weight of the evidence review requires

the court to review the entire record before determining the fact-finder clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). And again, we have no transcript and cannot review the weight of the evidence as to the court's factual decisions. *See* App.R. 9(B)(4). There is no indication the court abused its discretion or otherwise erred in declining to hold the father in contempt.

**{¶26}** In case the mother is also attempting to make general arguments related to her second motion for contempt, we lastly note she voluntarily dismissed her January 27, 2022 contempt motion on March 1, 2022. Her appendix contains a copy of her second contempt motion but with a post-filing notation typed on it claiming she did not want to dismiss the motion after the hearing. As noted in the Briefing Issues section supra, writing on documents in an appendix is not an available briefing method for raising an argument. *See* App.R. 16. We additionally note a related document in her appendix, which she believes supports her position, actually reveals there was an agreement to dismiss the second contempt motion made in the court's presence at trial. Regardless, this document is not part of the record, and the circumstances of her voluntary dismissal decision are not in the record before this court.

**{¶27}** This assignment of error is overruled

ASSIGNMENT OF ERROR THREE

**{¶28}** The mother's third assignment of error in part claims the guardian ad litem violated the law "in a deliberate attempt to mislead the court with false statements against mother that were proven false by another witness that was subpoenaed and testified to the contrary." The corresponding issue presented for review does not shed any light on this portion of the assignment of error. As previously mentioned, the listed assignments of error are not addressed in the argument section of her brief.

**{¶29}** We note the mother's statement of facts complains the guardian ad litem testified the mother did not exercise all of her companionship time without proof of this allegation made by the father. The mother also says the guardian ad litem testified the mother was confrontational at the office of the child's counselor while a person from the counselor's office (who was not the counselor) testified the mother was not confrontational. The trial court heard the witnesses testify and was in the best position to

judge the credibility of the witnesses and weigh the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997). Again, we have no transcript from which to review the content or credibility of testimony or the weight of the evidence.

{¶30} Within the third assignment of error, the mother also takes issue with the summer companionship schedule set forth in the March 2, 2022 judgment, complaining the court: granted the father the week of the county fair every year; eliminated weekend visitation in the summer; and defined her summer week as only six days in each alternating cycle. However, there is no apparent abuse of discretion in the decision to eliminate alternating weekends for the summer when the summer schedule was granting the mother alternating weeks. Moreover, each of the mother's summer weeks starts on a Sunday at 10:00 a.m. and ends on a Saturday at 8:00 p.m., which is more time than six days. In addition, the father was being maintained as the residential parent and custodian, and there was no requirement to give each party equal summer time. Notably, the summer schedule represented an increase in the mother's summer companionship time. Finally, without a transcript we cannot review the testimony of the witnesses and any requests by the parties relevant to companionship, including the rationale behind the decision regarding the week of the county fair. This assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

{¶31} The mother's fourth assignment of error claims:

"The trial court erred granting father full custody of child denying mother due process of law. Mother was threatened, intimidated and coerced under duress to agree to something against her will. Opposing part[y's] counsel also misled the judge claiming the mother was diagnosed with a mental illness which has now affected determinations relating to virtually every proceeding."

{¶32} The issue presented for review, which corresponds to this assignment of error, suggests the mother may be protesting the July 2015 entry designating the father as the residential parent. She states the court failed to give her an opportunity to be heard when it "took custody of the child from mother" after she reported a concern she had with a relative of the father. However, the July 21, 2015 judgment entry was said to be the product of an agreement occurring at the June 30, 2015 trial. There is no indication the mother raised issues with the agreement to the trial court at that time or thereafter. She

did not appeal the judgment designating the father as the residential parent. She did not mention this issue with the 2015 judgment in her four modification motions filed in 2020 and 2021. We do not have any relevant transcripts. There is thus no indication she raised an issue regarding the prior judgment at the hearings on her request to modify the allocation of parental rights. The propriety of the 2015 judgment naming the father residential parent is not before this court.

{¶33} As to the mother's argument that the father's attorney "misled the judge claiming the mother was diagnosed with a mental illness," the court's final judgment found a recent psychological evaluation did not raise concerns with the mother's mental health, regardless of any prior concern. A related document in the mother's appendix (showing a lack of diagnosis in a 2014 evaluation) is not part of the record before this court and cannot be considered (as discussed in the Briefing Issues section of this Opinion supra). If there was a concern that the father's counsel made a misleading statement at trial as to a prior diagnosis (as opposed to expressing a concern), then this document could have been presented at trial. Or, an objection could have been raised and testimony could have been presented (and very well may have been presented); a transcript is necessary to illuminate this issue on appeal.

{¶34} On the topic of opposing counsel, the mother's statement of the case attempts to set forth an additional complaint. She notes she was ordered to complete and pay for a psychological evaluation even though she was not diagnosed with a mental illness during the prior custody proceedings. (The guardian ad litem's report says the evaluation was the product of an agreement at a hearing.) The mother's statement of the case then states even though she was obligated to pay this expense, the costs for the guardian ad litem were not assessed equally or according to income because the father's attorney "scribbled on the court document appointing the GAL making mother responsible for both part[ies'] deposits to the GAL, totaling $1500.00." The conclusion section of her brief suggests she is accusing opposing counsel of fraud.

{¶35} The mother fails to satisfy her obligation to cite to the portions of the record relevant to her argument. She does not even specify the date of the document she is discussing. In any event, this assignment of error and the corresponding issue presented for review do not indicate they relate to this allegation. Rather, the allegation against

Case No. 22 CA 0958

opposing counsel here involves an alleged agreement and counsel's alleged reference to mental illness (and the four-sentence argument section of the brief generally protests the final decision on custody). The purpose of the statement of the case is to "briefly describ[e] the nature of the case, the course of proceedings, and the disposition in the court below." App.R. 16(A)(5). An entire argument cannot be presented in the statement of the case without a supporting argument section specifically addressing the allegations set forth in the recitation of facts and citing law on the particular subject. *See* App.R. 16(A)(3)-(5),(7).

{¶36} Although we need not proceed in the face of such briefing failure and we are not required to scour the record for a party, we note an August 20, 2020 entry states a hearing was held on August 5, 2020 and the parties requested the appointment of a guardian ad litem. Thus, contrary to Appellant's contention the court appointed the guardian ad litem sua sponte, the appointment was based on a request.

{¶37} The entry shows it was originally typed to say the parties shall each deposit $750 with the guardian ad litem, but this was changed in handwriting to say the mother shall deposit $1,500. Contrary to the mother's allegation, there is no indication the father's attorney was the source of the handwritten change in the entry; the ink appears to match that used by the trial judge to sign the entry. As can be seen by a file-stamped invoice (wherein the guardian ad litem sought court permission to deduct from the deposit), the mother paid the deposit in 2020. There is no indication the mother raised an issue with this deposit allocation to the trial court before or after paying it. We are to presume the regularity of the proceedings (i.e., the handwriting on the entry occurred prior to the entry's filing and was truly part of the original entry). Regardless, the trial court subsequently confirmed the allocation in its February 10, 2021 judgment, wherein the court said any guardian ad litem fees over the initial $1,500 deposit paid by the mother were to be shared equally by the mother and the father.

{¶38} Lastly, a reasoning error in allocating the deposit is not apparent on the record. In general, a trial court has discretion in allocating a guardian ad litem's fees. *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 23; *Karales v. Karales*, 10th Dist. Franklin No. 05AP-856, 2006-Ohio-2963, ¶ 21. Allocation of a guardian ad litem's fees involves a consideration of economic status, a party's success,

Case No. 22 CA 0958

a party's conduct causing the incurring of fees, and other relevant considerations. *See id.*; Sup.R. 48(H)(3).

**{¶39}** Here, the appointment of the guardian ad litem was the product of the mother's June 20, 2020 motion to modify custody. The appointment was discussed at a hearing before the order was issued. The mother paid the deposit soon after the August 5, 2020 appointment order allocating the deposit to her. A February 10, 2021 judgment reiterated the decision as to allocation of the deposit. The mother subsequently dismissed her modification motion after firing her attorney on the night before the May 2021 trial. She filed a new motion and amended it in July 2021, which was the motion resulting in the judgment on appeal. The existence or content of any argument concerning the deposit allocation is unknown, as no transcript or valid substitute was filed in the appeal.

**{¶40}** Under the circumstances before this court, any argument the trial court abused its discretion in allocating the deposit for the fees of the guardian ad litem is unsupported. In any event, the mother does not specifically argue the court erred in the allocation. Rather, she accuses opposing counsel of modifying a judgment to change the allocation (as addressed supra). Just as the latter argument was not properly briefed, any argument on the court's discretionary decision was not properly briefed. This assignment of error is overruled.

### GENERAL ASSIGNMENT OF ERROR

**{¶41}** Lastly, Appellant generally sets forth an assignment of error regarding the denial of custody, referring to a parent's fundamental due process right to have custody and control of their child. She asks this court to weigh the evidence and the credibility of the witnesses and conclude the trial court clearly lost its way and created a manifest miscarriage of justice in maintaining the father as the residential parent. (These are the sole arguments in the argument section of her brief.)

**{¶42}** A trial court's custody modification decision is reviewed for an abuse of discretion, and a modification decision will not be reversed as being against the weight of the evidence if it is supported by a substantial amount of credible and competent evidence. *Davis*, 77 Ohio St.3d at 416, 421. An abuse of discretion connotes more than an error in judgment but implies the trial court's attitude was unreasonable, arbitrary, or

unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[W]hen applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

**{¶43}** "The juvenile court shall exercise its jurisdiction in child custody matters in accordance with [R.C] 3109.04 * * *." R.C. 2151.23(F)(1). Pursuant to R.C. 3109.04, the court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds a sufficient change in circumstances has occurred and the modification is necessary to serve the best interest of the child. R.C. 3109.04(E)(1)(a) (and the residential parent shall be maintained unless the parties agree there has been familial integration with consent, or the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child).

**{¶44}** The trial court indicated a change in custody would not be in the child's best interest and made findings under each statutory best interest factor, as hereafter reviewed. Each parent wished to be named the residential parent and custodian. *See* R.C. 3109.04(F)(1)(a) (parents' wishes). As we discussed in the first assignment of error, the court addressed the child's in camera statements about his wishes and concerns. *See* R.C. 3109.04(F)(1)(b) (the wishes and concerns of the child if the court interviewed the child in chambers). The child said he would like equal time with his parents. However, both parents were seeking sole custody. And, as the trial court disclosed, the child further revealed that he was "very happy with the way things are working now" and enjoys the time he has with his mother "as it is now."

**{¶45}** The court acknowledged the child was "very bonded" with both parents and adjusted to both parents' homes while doing well in his school district. *See* R.C. 3109.04(F)(1)(c) (the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest), (d) (the child's adjustment to home, school, and community). Because we do not have the transcript, we cannot consider the child's relationship with other household members, including the child's step-mother, who was discussed in the mother's brief. As the trial court noted, there was no indication of physical health issues, and the mother's evaluation did not indicate a mental health issue. *See* R.C. 3109.04(F)(1)(e).

**{¶46}** The trial court opined neither party was "more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights." *See* R.C. 3109.04(F)(1)(f). In evaluating whether the residential parent continuously and willfully denied court-ordered parenting time, the court found: "While Father has failed to accommodate the Mother's numerous requests relative to visitation, he has not willfully denied her parenting time. Mother regularly exercises her visitation." *See* R.C. 3109.04(F)(1)(i). It was also noted the mother had a child support arrearage of less than $1,000. *See* R.C. 3109.04(F)(1)(g). The factor applicable to certain convictions was found to be inapplicable. *See* R.C. 3109.04(F)(1)(h). Lastly, neither party planned to establish a residence outside of the state. See R.C. 3109.04(F)(1)(j).

**{¶47}** The mother believes a change of custody would be in the child's best interest. In the statement of facts and the statement of the case sections of the mother's brief, she sets forth factual allegations in support of her request for custody and claims the testimony failed to prove certain allegations. However, such contentions must be supported by a transcript.

**{¶48}** We also emphasize the following principle: "Credibility is a question for the trier of fact who occupies the best position from which to judge demeanor, voice inflection, gestures, eye movements, nervousness, and other signs of untruthfulness as a witness is testifying." *In re L.G.*, 7th Dist. Belmont No. 20 BE 0006, 2020-Ohio-6831, ¶ 48. These indicators do not transfer well onto the written page but are crucial in a custody case, where there may be much in a party's attitude and demeanor that will not be evident in the written record. *Davis*, 77 Ohio St.3d at 418-419. "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * *." *Id.* at 418.

**{¶49}** The trial court conducted an in camera interview with the child. The trial court heard and saw the parties as they spoke and judged their credibility, sincerity, and attitude, which is the trial court's primary function and prerogative. *Id.* at 418-419. The judges on an appellate panel cannot grant custody to an appellant merely because they would have decided a custody motion differently; we do not substitute our judgment for that of the trial court in considering the weight to assign the evidence on the statutory best interest factors when modifying custody. *Id.* at 417. In any event, the mother failed to

Case No. 22 CA 0958

ensure the filing of a transcript from which this court could have conducted a weight of the evidence review. As we cannot conclude the trial court abused its discretion in naming the father residential parent, this assignment of error is overruled.

{¶50} For the foregoing reasons, the trial court's judgment is affirmed.


Donofrio, P. J., concurs.

Waite, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Carroll County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**