[Cite as *Lanza v. Lanza*, 2023-Ohio-3531.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

MICHELLE S. LANZA,

       Plaintiff-Appellee/
       Cross-Appellant,

- vs -

FRANKLIN C. LANZA, et al.,

       Defendant-Appellant/
       Cross-Appellee.

CASE NO. 2023-L-024

Civil Appeal from the
Court of Common Pleas,
Domestic Relations Division

Trial Court No. 2016 DR 000595

**O P I N I O N**

Decided: September 29, 2023
Judgment: Affirmed

*Gary S. Okin*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077 (For Plaintiff-Appellee/Cross-Appellant).

*James B. Rosenthal*, Cohen Rosenthal & Kramer LLP, 3208 Clinton Avenue, Cleveland, OH 44113 (For Defendant-Appellant/Cross-Appellee).

EUGENE A. LUCCI, J.

{¶1} Appellant/cross-appellee, Franklin C. Lanza, ("Husband"), and appellee/cross-appellant, Michelle S. Lanza, ("Wife"), appeal the judgment overruling their objections to a magistrate's decision, denying their respective motions to show cause, and awarding Wife a portion of her attorney fees. We affirm.

{¶2} In 2016, Wife initiated divorce proceedings. In late 2018, the parties resolved the outstanding issues in the divorce case and read their agreement on the

record in court. In January 2019, the trial court approved a divorce decree that incorporated a transcript of the in-court settlement.

{¶3} Later that year, the parties began engaging in post-decree litigation as follows. Husband moved the court to order Wife to appear and show cause as to why she should not be held in contempt for: (1) failing to pay her own attorney fees as ordered in the divorce decree, (2) failing to leave the marital residence in "broom clean condition" and causing waste to the residence in violation of the decree, and (3) breaching her warranty that there was not, and would not be, damage to the marital residence prior to her vacating the residence. Wife filed a motion to compel discovery, and she thereafter moved the court to order Husband to appear and show cause as to why he should not be held in contempt for failing to indemnify and hold her harmless on a debt owing to the parties' landscaper. Both parties requested attorney fees.

{¶4} These matters proceeded to hearing before a magistrate in February and August 2020. On February 11, 2022, the magistrate issued a decision determining that neither party should be held in contempt and that Husband should pay wife $21,000.00 toward her attorney fees. Both parties objected to the magistrate's decision. On January 30, 2023, the trial court ruled on the objections, denying the objections relative to the magistrate's determination that neither party should be held in contempt, and issued judgment that recalculated the attorney fees awarded to Wife to $20,971.80.

{¶5} In his appeal, Husband assigns six errors to the trial court's January 30, 2023 judgment, and, in her cross-appeal, Wife assigns two errors. We consolidate and take out of order certain assigned errors to facilitate our discussion.

Case No. 2023-L-024

**{¶6}** At the outset, we note that, as to all the assignments of error save for Husband's sixth assigned error, the appeal and cross-appeal pertain to the trial court's rulings on the parties' objections to the magistrate's decision. In such a case, "any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision; the focus is on the trial court's actions and not the actions of the magistrate." *Obradovich v. Horvath*, 11th Dist. Trumbull No. 2008-T-0096, 2009-Ohio-3176, ¶ 38, citing *W.R. Martin, Inc. v. Zukowski*, 11th Dist. Lake Nos. 2006-L-028 and 2006-L-120, 2006-Ohio-6866, ¶ 32. We generally review a trial court's action on a magistrate's decision for an abuse of discretion. *Walsh v. Walsh*, 11th Dist. Ashtabula No. 2022-A-0030, 2022-Ohio-3373, ¶ 31. "An abuse of discretion is the trial court's '"failure to exercise sound, reasonable, and legal decision-making."'" *Id.* at ¶ 31, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). Where the issue on review has been entrusted to the discretion of the trial court, "the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Walsh* at ¶ 32, citing *Beechler* at ¶ 67. "When a pure issue of law is involved in appellate review, however, the mere fact that the reviewing court would decide the issue differently is enough to find error." *Walsh* at ¶ 32, citing *Beechler* at ¶ 67.

**{¶7}** Next, we note that Husband's first four assigned errors and Wife's first assigned error pertain to the trial court's denial of their respective motions requesting the court to hold the other in contempt for failure to abide by terms of the divorce decree. We also generally review a trial court's ruling on a contempt motion for an abuse of discretion. *Miller v. Miller*, 11th Dist. Trumbull No. 2019-T-0048, 2020-Ohio-6914, ¶ 10. "Contempt

3

is a disregard of, or disobedience to, the orders or commands of judicial authority. Indirect contempt may include the disobedience of, or resistance to, a lawful order, judgment, or command of a court officer." (Footnote omitted). *Miller* at ¶ 8, quoting *State v. Flinn*, 7 Ohio App.3d 294, 295, 455 N.E.2d 691 (9th Dist.1982); and *Dozer v. Dozer*, 88 Ohio App.3d 296, 302, 623 N.E.2d 1272 (4th Dist.1993); and citing R.C. 2705.02. Where the contempt allegation is based on violation of a court order, the order must be clear and definite with respect to the precise conduct constituting disobedience. *Does v. Univ. Hosps. Health Sys., Inc.*, 2023-Ohio-2120, --- N.E.3d ----, ¶ 18-19 (11th Dist.); *Cain v. Cain*, 11th Dist. Portage No. 2017-P-0084, 2019-Ohio-184, ¶ 21.

{¶8} In such a case, "[t]he party moving to hold another in civil contempt of court has the burden to show by clear and convincing evidence the existence of a valid court order and the other's noncompliance." *Miller* at ¶ 12, quoting *Carroll v. Detty*, 113 Ohio App.3d 708, 711, 681 N.E.2d 1383 (4th Dist.1996). Clear and convincing evidence is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331, 708 N.E.2d 193 (1999), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶9} Mindful of these principles, we first address Husband's assigned errors regarding the trial court's judgment denying his contempt motion. In his first and second assigned errors, Husband argues:

> [Husband's First Assigned Error:] The trial court committed prejudicial error in denying Defendant-Appellant Franklin Lanza's Motion to Show Cause as to Michelle's failure to pay her own attorney fees and expenses as ordered in the final Judgment Entry of Divorce based on the merger doctrine set forth in *Colom v. Colom*, 58 Ohio St.2d 245, 389 N.E.2d 856

4

(1979) when Franklin is not seeking to enforce prior interlocutory orders or to appeal them.

[Husband's Second Assigned Error:] The trial court committed prejudicial error in denying Defendant-Appellant Franklin Lanza's Motion to Show Cause as to Michelle's failure to pay her own attorney fees and expenses by "finding" that the amounts Franklin previously paid were from marital assets when no such determination was made prior to or in the final Judgment Entry of Divorce, the issue was never tried, the Court did not reserve jurisdiction over the parties' property settlement, and the Court's "finding" that an asset was marital property, without prior notice or opportunity to be heard, constitutes a new ruling in this case nearly four years after the Judgment Entry of Divorce.

{¶10} Husband's first and second assigned errors pertain to funds paid during the divorce proceedings for Wife's attorney fees and expenses from a PNC account that was held in Husband's name. While the parties' divorce was pending, the trial court restrained the parties from using this PNC account. However, during the divorce proceeding, the restraining order was partially lifted several times by court orders, two of which are relevant to Husband's argument. First, in 2017, the magistrate lifted the restraining order to allow for $20,000.00 in distributions to each party from the PNC account, stating that the parties were to use the money as follows: "$10,000.00 (each) for their living expenses and $10,000.00 (each), which shall be paid directly to their present divorce attorneys." The order further stated that the distributions were "subject to re-allocation and/or in consideration as spousal and child support calculations at the final disposition herein. Further, the payment of attorney fees herein is also subject to re-allocation at the final disposition."

{¶11} In 2018, the magistrate again lifted the restraining order as to the PNC account, "to allow each party to receive $5,000 for their litigation expenses. Further, the

5

plaintiff is to receive an additional $2,500 as a deposit for the payment of her vocational expert. The payment of litigation costs, court costs, attorneys' fees and experts' costs are all subject to further allocation at the final disposition herein." (Footnote omitted.)

{¶12} As noted in our recitation of the procedural history, final disposition of the divorce was made by way of an in-court settlement agreement and an agreed divorce decree. The decree ordered that "the Plaintiff, Michelle Lanza, shall pay her own attorney fees and expenses, and the Defendant, Franklin Lanza, shall pay his own attorney fees and expenses."

{¶13} In his motion to show cause, Husband maintained that the decree's requirement that each party pay their own attorney fees and expenses necessarily required Wife to pay him the $17,500.00 that she received for attorney fees and expenses from the PNC account pursuant to the two interlocutory orders set forth above. Husband's argument is based on at least two necessary premises: first, that the decree's order as to attorney fees encompassed fees that had already been paid, and, second, that the PNC account was Husband's separate property. The magistrate disagreed with these premises and determined that the portion of Husband's motion relating to Wife's failure to reimburse him for interim attorney fees should be denied.

{¶14} In overruling Husband's objection to this aspect of the magistrate's decision, the trial court noted as "an aside," that the PNC account was marital property. The court determined that the decree's provisions regarding attorney fees was prospective, and nothing in the decree or the transcript of the in-court settlement provided that Wife would pay any sum to Husband for interim attorney fees paid from the PNC account. In support, the court noted that the merger doctrine extinguished the interim orders.

6

Case No. 2023-L-024

{¶15} On appeal, Husband first challenges the court's application of the merger doctrine. As stated by the Ohio Supreme Court in *Colom v. Colom*, 58 Ohio St.2d 245, 389 N.E.2d 856 (1979), syllabus, "In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree."

{¶16} Husband maintains that the court misapplied this doctrine because Husband was not attempting to enforce the interlocutory orders, and he, in fact, had already complied with these orders for the payment of attorney fees. Rather, he was referencing the interlocutory orders to calculate the amounts of fees and expenses that had been paid from the PNC account and to provide context to the decree. Husband maintains that the trial court erred in applying the merger doctrine to treat the interlocutory orders as though they "are erased from the record as if they never happened."

{¶17} However, we do not read the court's decision in the same manner as Husband. The court noted that each interlocutory order stated that the attorney fees and expenses could be allocated or reallocated. The court relied on the merger doctrine to demonstrate the decree's silence as to *allocation or reallocation of the interim attorney fees*. Because the decree contained no provision as to payment of interim attorney fees previously ordered, Husband could not rely on the statement that each party pay their own attorney fees as retroactively amending fees already paid. The trial court did not misapply the merger doctrine. Accordingly, Husband's first assigned error lacks merit.

{¶18} Moreover, the parties' decree incorporated the parties' agreement regarding division of property. The decree does not designate the PNC account as

7

Case No. 2023-L-024

"marital" or "separate" property but ultimately awards the account to Husband. *See* R.C. 3105.171(A)(3)(a) (defining marital property) and R.C. 3105.171(A)(6) (defining separate property). In his second assigned error, Husband challenges the trial court's "aside" note that the PNC account constituted marital property.

{¶19} Regardless of the propriety of the trial court's statement in the ruling on objections, it was Husband's burden to establish the basic premises of his claim. The decree does not contain any determination that the PNC account constituted Husband's "separate property." Notwithstanding Husband's attempts to categorize the PNC account as "separate property" through the post-divorce proceedings and this appeal, our disposition of Husband's first assigned error renders his second assigned error moot, and we decline to further address it. [1] *See* App.R. 12(A)(1)(c).

{¶20} Next, with respect to the denial of his motion to show cause, in Husband's third and fourth assigned errors, he argues:

> [Husband's Third Assigned Error:] The trial court committed prejudicial error by denying any and all relief to Franklin on his motion to show cause as it related to waste and damage to the marital residence and "broom clean" condition when the parties' contractual, in court settlement, unambiguously imposed liability on Michelle for waste and damage to the premises that occurred during her occupancy and unambiguously imposed on her a duty to leave the premises in "broom clean" condition.

> [Husband's Fourth Assigned Error:] The trial court committed prejudicial error by denying any and all relief to Franklin on his motion to show cause as it related to waste and damage to the marital residence and "broom clean" condition when the manifest weight of the evidence established that both parties

---

1. Wife observes that Husband's appellate brief contains factual representations not in the record regarding the PNC account. Factual representations lacking a foundation in the record are not appropriately considered by this court; however, we need not rely on any of these representations to resolve Husband's assigned errors.

Case No. 2023-L-024

agreed at least some of the waste and damage occurred while Michelle's warranty applied and undisputed evidence showed that Franklin paid to haul trash and debris that Michelle had left behind.

{¶21} Husband's third and fourth assigned errors pertain to the condition of the marital residence once Wife vacated the residence. Relative to this issue, the divorce decree provided as follows:

> * * * Michelle Lanza, shall vacate the * * * Sanctuary Drive, Kirtland Hills, Ohio 44060 residence on or before March 1, 2019. The Plaintiff, Michelle Lanza, warrants and represents that *she has not caused* an[y] waste or damage to [the] residence. *The Plaintiff, Michelle Lanza, shall not cause* any waste or damage to the residence and shall ensure that the residence is in broom clean condition when she vacates the residence. The parties acknowledge there is existing damage to a wall caused by the minor child, *which shall not be considered waste or damage created by Plaintiff, Michelle S. Lanza*, and which shall not be her obligation to repair.

(Emphasis added.)

{¶22} This provision in the divorce decree differs somewhat from the transcript of the in-court agreement attached to the decree. The transcript provides that wife "warrants and represents *there hasn't been any waste or destruction* caused to the residence. She also warrants and represents she will not cause any waste or destruction to the residence, and she will also leave the residence in what is known as broom clean condition." (Emphasis added.)

{¶23} In the proceedings before the magistrate, Husband maintained that this provision in the transcript controlled over the terms of the divorce decree, and that Wife's warranty that there was no waste or destruction caused to the residence was not specific to damage arising from her own conduct. However, Wife maintained that the terms of the decree prevailed over the in-court settlement transcript, and, thus, Wife had warrantied

9

that *she* had not caused waste or damage to the residence and that *she* would not thereafter cause any waste or damage.

{¶24} In the magistrate's decision, the magistrate determined that the terms of the decree prevailed over the terms of the in-court settlement transcript with regard to damage to the residence. The magistrate concluded that much of the alleged damage to the residence was normal wear and tear, due to actions of the parties' children, or existed while Husband and Wife were still residing in the home together.

{¶25} The magistrate further determined that, in general, Wife's pictures of the home which were entered into evidence at the hearing, reflected "a completely clean and vacuumed residence." However, the pictures Husband entered into evidence demonstrated some trash in drawers, items left on shelves and in closets, and trash that was pulled from behind and beneath furniture and displayed in the middle of a room. The magistrate deemed the most notable of the "trash" that was left in the marital residence was located behind and/or beneath furniture in the parties' then minor son's bedroom. Further, the magistrate noted that Husband designated certain items as "trash" or "waste" that Wife should have removed despite the items not being listed as property that she was permitted to remove pursuant to a joint exhibit attached to the decree.

{¶26} The magistrate determined that Wife had substantially complied with the decree's requirement to leave the residence in broom-clean condition. Further, the magistrate noted that contempt must be based on a clear order of what is required by the alleged contemnor. Ultimately, the magistrate determined that Husband failed to prove that Wife was in contempt for damage to the residence or failure to leave it in broom-clean condition.

10

{¶27} In his objections, Husband again advanced his argument that the in-court settlement transcript provision regarding damage to the residence controlled over the provision in the divorce decree, citing several cases in support. The trial court overruled this objection, stating the cases on which Husband relied pertained to discrepancies between a "separation agreement" filed with the court and incorporated in a decree and the provisions of the decree. Here, no separation agreement was filed. Accordingly, the court overruled Husband's objection.

{¶28} Husband also objected to the magistrate's failure to find Wife in contempt when trash was left in the home, and it was not in "broom[-]clean condition" under any definition of that phrase. However, the trial court noted that the parties did not define "broom[-]clean condition," and the phrase was open to interpretation. The court also noted that Husband had provided no "case law" supporting the interpretation of "broom clean." Moreover, the court determined that the items left in closets and shelves which were not on the parties' joint exhibit as items to be removed by Wife were properly left at the residence. Accordingly, the trial court overruled Husband's objection.

{¶29} In his third assigned error, Husband argues that the trial court erred in interpreting Wife's warranty in the decree as warrantying only that she personally had not and would not damage the marital residence, contending that such an interpretation leads to an absurd result. [2] Husband likewise asserts that the trial court "imposed an absurd result" in its interpretation of Wife's promise to leave the residence in "broom[-]clean"

_____

2. As previously quoted, the transcript of the in-court settlement indicated that Wife warrantied that "there has not been any *waste* or *destruction* caused to the residence." Husband appears to equate the term "damage" to either "waste" or "destruction." We need not, and do not, reach the issue of whether the term "damage" is synonymous with these terms.

Case No. 2023-L-024

condition as not requiring Wife to remove her personal items unless they were listed on the parties' joint exhibit.

{¶30} However, Wife responds that the manifest absurdity doctrine on which Husband relies on appeal was not the basis of Husband's objections below with regard to the damage provision. In his reply brief, Husband maintains that his written closing argument and his objections did raise his position regarding contract interpretation. However, the objection to which Husband cites in his reply, although providing a general reference to contract interpretation, does not advance the "absurd results" argument that he raises on appeal.

{¶31} Civ.R. 53(D)(3)(b)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(B)(3)(b)(iv) provides, "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Accordingly, Husband has forfeited all but plain error argument with respect to whether the court's interpretations of the provisions in the divorce decree results in an absurdity.

{¶32} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." (Citations omitted.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. Here, Husband has not advanced a plain

12

error argument with respect to the absurd results doctrine, and we conclude this is not the extremely rare case to which the plain error doctrine is appropriately applied. Moreover, we note, as previously stated, to hold a party in contempt for violation of a court order, the order must be clear and unambiguous as to the conduct constituting the violation. *Does*, 2023-Ohio-2120, at ¶ 18-19; *Cain*, 2019-Ohio-184, ¶ 21.

**{¶33}** For the foregoing reasons, Husband's third assigned error is overruled.

**{¶34}** With respect to his fourth assigned error, Husband argues that the court erred in denying him any relief because the manifest weight of the evidence established that at least some of the damage to the residence occurred while Wife's "warranty applied" and undisputed evidence showed that Husband paid to remove trash and debris that Wife had left at the residence.

**{¶35}** Husband maintains that he presented unrebutted evidence of waste, trash, and unwanted personal items left in the residence. However, our resolution of Husband's third assigned error limits our discussion of his fourth, as Husband failed to establish certain bases on which his fourth assigned error is premised. Namely, Husband has not established that the court erred in its determination that Wife properly left personal property in the residence that was not listed on the joint exhibit for her removal. Husband has also not established that the trial court erred in applying the damage warranty in the decree to only damage that was caused by Wife. Husband does not contend that the manifest weight of the evidence establishes that Wife *caused* the damages he identifies.

**{¶36}** With respect to trash left at the residence, we agree that there was unrefuted evidence that trash and debris were located in the residence when Husband regained occupancy. The magistrate also acknowledged that trash was left in the

13

Case No. 2023-L-024

residence; however, the magistrate determined the trash to be of "an insignificant amount," and that it "could be easily removed with little trouble, time, and expense." Further, the magistrate's decision sets forth case law for the proposition that substantial compliance may excuse a technical violation of a court order in certain cases. And, here, the magistrate determined that Wife substantially complied with her promise to leave the residence in broom-clean condition.

{¶37} Husband objected to the findings regarding the insignificance of the trash, maintaining that the findings mischaracterized the evidence. The trial court overruled the objection because Husband did not support it with specificity to the record as required by Civ.R. 53(D)(3)(b)(ii).

{¶38} On appeal, Husband does not explain how the trial court erred in overruling his objection to the insignificance of the trash. Further, Husband did not object below to the magistrate's determination that substantial compliance may excuse technical violations of a court order.

{¶39} Accordingly, Husband's fourth assigned error lacks merit.

{¶40} We next take out of order and address Wife's first assigned error, wherein she argues that the court should have found Husband in contempt, maintaining:

> [Wife's First Assigned Error:] The trial court's denial of Michelle's Motion to Show Cause was against the manifest weight of the evidence where the evidence surrounding her payment of the landscaping costs w[as] unrebutted and credible.

{¶41} The parties' decree of divorce ordered "that the Defendant, Franklin Lanza, shall indemnify and hold the Plaintiff, Michelle Lanza, harmless on any and all debt due and owing to the landscaper(s) associated with the real properties located at * * *

14

Sanctuary Drive, Kirtland Hills, Ohio 44060 and * * * Chatham Way, Mayfield Heights, Ohio 44124."

{¶42} At the hearing before the magistrate, Wife testified that she paid the landscaper a negotiated settlement of $4,000.00. However, Husband maintained that he was not required to reimburse Wife for moneys she paid to the landscaper because she provided him no notice of the amount of the outstanding debt prior to her payment of the debt. Wife argued that she was not required to provide Husband notice of the debt by the terms of the divorce decree.

{¶43} The magistrate determined that Wife was not required to provide Husband notice prior to making payment.[3] However, the magistrate determined that Wife had failed to establish her contempt claim with clear and convincing evidence.

{¶44} Wife objected, arguing the uncontroverted testimony of Wife and the landscaper established that Wife paid the landscaper $4,000.00 as a compromised amount of what was owed, and she was entitled to indemnification from Husband pursuant to the decree. The trial court overruled the objection, finding that, although Wife was not required to provide Husband notice of the debt prior to settling the debt, she was required to provide Husband proof of payment to trigger Husband's responsibility to indemnify prior to litigating this issue in a motion to show cause.

{¶45} On appeal, Wife contends that the court's ruling overlooks the testimony of the landscaper, who maintained that he contacted Husband regarding his charges, and Husband directed the landscaper to Wife. However, Husband's knowledge of an

---

3. Husband did not object to this portion of the magistrate's decision that concluded Wife was not required to notify Husband prior to paying the landscaping bill.

15

Case No. 2023-L-024

outstanding landscaping debt does not provide Husband notice that Wife has paid the debt or the amount she paid. In her brief, Wife maintains that if Husband "wasn't aware of the amount prior to the filing of" Wife's motion, "he certainly was as of that date." Although this may be true, Wife does not explain how the trial court erred in determining that she was required to provide Husband some notice of payment *prior to* seeking to hold him in contempt for failing to indemnify her. Accordingly, Wife's first assigned error lacks merit.

{¶46} Having addressed the assignments of error pertaining to the merits of the parties' respective motions for contempt, we address together Husband's fifth assigned error and Wife's second assigned error, which both involve attorney fees. In these assigned errors, the parties contend:

> [Husband's Fifth Assigned Error:] The court committed prejudicial error in denying Franklin's motion for attorney fees and awarding Michelle attorney fees on the basis that she should not have had to defend against Franklin's claims for the $17,500 and damage to the property/broom-clean condition when the issue of the $17,500 was submitted solely on briefing, occupied no hearing time and should have been decided in Franklin's favor, and when it is undisputed that Michelle did leave behind trash which Franklin disposed of at his expense and did leave the home with waste and damage in violation of her warranty.

> [Wife's Second Assigned Error:] The trial court erred in only awarding Michelle 60% of her attorney fees when equity demanded that Franklin should pay all of her attorney fees in defending against his Motion to Show Cause and in prosecuting hers.

{¶47} Pursuant to R.C. 3105.73(B):

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and

16

litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶48} "The statute gives a trial court wide latitude to award attorney fees and litigation expenses if it finds the award equitable." (Citation omitted.) *Lindsey v. Lindsey*, 2021-Ohio-2060, 174 N.E.3d 458, ¶ 44 (11th Dist.).

{¶49} Here, in ruling on the parties' objections, the trial court determined that Husband's contempt claim regarding interim attorney fee reimbursement was "baseless." In addition, the court agreed with the magistrate that Husband failed to provide reliable, consistent, and credible testimony and evidence regarding his claim that Wife should be held in contempt for not leaving the residence in broom-clean condition. The court ultimately agreed with the magistrate that Husband's request for attorney fees be denied and that Wife be awarded 60% of her attorney fees, and the court recalculated that percentage to the precise figure of $20,971.80.

{¶50} On appeal, Husband argues that based on the trial court's reasoning, because Wife did not prevail on her contempt claim, she should likewise have been denied attorney fees, and, because Husband should have prevailed on his claims, he should have been awarded attorney fees. However, the trial court did not award fees to Wife on Husband's claims solely because he did not prevail, it did so because it determined that Husband's claim as to reimbursement of interim fees was "baseless," and because his testimony regarding Wife's failure to leave the residence in broom-clean condition and the clean-up of the residence was unreliable and inconsistent. Further, as addressed above in our discussion of Husband's first through fourth assigned errors,

17

Case No. 2023-L-024

Husband has not established that the court erred in denying his motion to hold Wife in contempt.

{¶51} Wife argues that the trial court should have awarded her the entirety of her attorney fees because the evidence submitted at the hearings before the magistrate demonstrated that Husband pursued frivolous actions against her for the sole purpose of ruining her financially. However, the trial court did find Husband's claim regarding the interim attorney fees to be baseless, and the award of attorney fees included time that Wife's counsel estimated that he spent on defense of this claim. In addition, the trial court's award of the attorney fees to her includes time spent on defense of Husband's claim that she failed to leave the home in broom-clean condition. We cannot say the trial court abused its discretion in failing to award Wife attorney fees incurred due to her unsuccessful motion to hold Husband in contempt or for her motion to compel production of documents that the trial court concluded were irrelevant.

{¶52} Further, the parties raise arguments regarding stipulations as to when their attorney fee affidavits were to be submitted, whether there existed a stipulation as to the reasonableness and necessity of fees, whether evidence should have been considered relative to a separate case, and whether the evidence demonstrated ill-intent on behalf of Husband in filing his motions. However, given the trial court's bases for awarding Wife attorney fees on two of Husband's claims, and because there exists no challenge to Wife's attorney fee affidavit, the court's ruling on the remaining issues argued by the parties in the present assigned errors do not bear on the ultimate award of attorney fees. Accordingly, neither party has demonstrated that the court's denial of Husband's request

18

for attorney fees and the partial granting of Wife's request for attorney fees constituted an abuse of discretion.

{¶53} Accordingly, Husband's fifth assigned error and Wife's second assigned error lack merit.

{¶54} In his sixth assigned error, Husband argues:

{¶55} "In ruling on Franklin's objections to the Magistrate's ruling, the Court committed prejudicial error by failing to undertake an independent review of the record."

{¶56} Pursuant to Civ.R. 53(D)(4)(d), "In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

{¶57} Husband first maintains that, had the trial court independently reviewed the record, it would have agreed with him that certain damages occurred to the residence during the period of Wife's occupancy. Further, Husband maintains that, had an independent review occurred, the trial court would have determined that the parties' joint exhibit did not relieve Wife of her duty to remove personal items, as she testified that she did remove personal items not listed on the joint exhibit. However, the trial court's disagreement with Husband's position on these issues does not establish that the court failed to independently review the objected matters.

{¶58} Further, Husband cites instances where he maintains the trial court made statements inconsistent with the testimony. First, Husband maintains that the court found he was not present at the residence on the day his movers removed items from the home after Wife had vacated the residence. Husband maintains that his testimony established he was only not present when certain items were thrown out, but he did testify that he

19

was present that day. Next, Husband maintains that the trial court incorrectly stated in its decision that the magistrate did not use the term "pristine condition" in the magistrate's decision. Husband references the portion of the magistrate's decision wherein the term was used. Although these statements in the court's ruling may have been inaccurate, it does not establish that the trial court failed to independently review the objected matters.

{¶59} Husband further cites to the trial court's determinations that (1) he was on notice of damage to the kitchen floor caused by a water cooler prior to entering into the in-court settlement, and (2) the damage was noted on an appraisal conducted in 2017. Husband maintains that these statements are inconsistent with an independent review because the trial court excluded the testimony of the appraiser, and the damage occurring to the kitchen floor that was included in the appraisal was different damage to the floor than the water cooler damage, which occurred during Wife's occupancy. Although the trial court appears to have incorrectly identified the floor damage, we conclude, again, that this misidentification does not establish that the trial court failed to independently review the objected matters.

{¶60} Last, Husband maintains that the trial court inaccurately characterized his claim for contempt on the interim attorney fee award as "consum[ing] much of the trial transcript." Husband maintains that the transcript contains no testimony regarding this argument, as he had agreed to submit this issue on written argument, and only a small portion of argument at the hearings was devoted to this issue.

{¶61} The transcript does indicate that there was no "testimony" advanced on the issue of interim attorney fees and expenses, as counsel for both parties agreed that it constituted a legal issue. Approximately 12 pages of transcript contain the parties'

Case No. 2023-L-024

arguments pertaining to this claim. The trial court's characterization of this as "much" of the transcript may not have been the most appropriate term, but, again, it does not demonstrate that the trial court failed to conduct an independent investigation.

{¶62} Despite the above nonprejudicial misstatements or mischaracterizations, the trial court's 18-page decision assessed each of the numerous objections raised and appears to independently review each objection.

{¶63} Accordingly, Husband's sixth assigned error lacks merit.

{¶64} The judgment is affirmed.


MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2023-L-024