[Cite as *Fien v. Galloway-Fien*, 2024-Ohio-5762.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

WILLIAM G. FIEN, JR.,

        Plaintiff-Appellee,

- vs -

SHERRY L. GALLOWAY-FIEN,

        Defendant-Appellant.

CASE NO. 2023-G-0048

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2012 DC 000898

## O P I N I O N

Decided: December 9, 2024
Judgment: Affirmed in part, reversed in part, and remanded

*Patrick DiChiro*, 6300 Rockside Road, Suite 302, Independence, OH 44131 (For Plaintiff-Appellee).

*Sherry L. Galloway-Fien*, pro se, 15863 Thompson Road, Thompson, OH 44086 (Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1}    Appellant, Sherry Galloway-Fien, and Appellee, William Fien, were divorced in 2015. Six years later, the parties each filed post-decree motions asking the court to order the other to show cause why the other should not be held in contempt for failing to comply with the Divorce Decree's property division terms.

{¶2}    Appellee's post-decree motion alleged Appellant had failed to pay him his agreed upon share of equity ($17,130.50) in their W. 157th Street residence. Appellant first filed a Motion to Modify Child Support and then a Motion to Show Cause, which

asserted that Appellee had failed to make mortgage payments on the Thompson Road residence.

{¶3} After holding a hearing, a magistrate issued a decision. The trial court adopted the magistrate's decision, over Appellant's objections. For the reasons stated below, we affirm the trial court's judgment in part, reverse in part, and remand.

## Substantive and Procedural History

{¶4} Appellant and Appellee were married March 20, 2005, and had two children.

{¶5} On September 6, 2012, Appellee filed a Complaint for Divorce.

{¶6} On May 11, 2015, the trial court entered a Judgment of Divorce. That judgment addressed (among other things) the division of two properties: a Thompson Road marital residence and a W. 157th Street residence.

**The Divorce Decree:**

{¶7} As to the Thompson Road residence, the Divorce Decree stated:

[Appellee] shall be entitled to retain exclusive possession of the Thompson Road property unless the property is sold or [Appellant] removes [Appellee] from liability on the residence as set forth herein. [Appellee] shall be responsible for the first and second mortgages on said property and all other obligations associated with said residence and shall indemnify and hold [Appellant] harmless thereon.

IT IS FURTHER ORDERED that [Appellee] shall be granted one year from the date of this final Judgment Entry of Divorce to refinance or otherwise remove [Appellant's] name from the liabilities on the first and second mortgages associated with the Thompson Road property. If after one year [Appellee] is unable to refinance or otherwise remove [Appellant's] name from the first and second mortgages at the Thompson Road property, then [Appellant] shall have 90 days to refinance or otherwise remove [Appellees'] name from the liabilities on the first and second mortgages associated with the Thompson road property. . . . If after both periods of time for the parties to refinance or otherwise remove the other from liability on the Thompson Road property have expired and neither party has refinanced the residence or otherwise removed the pother party from liability, then the residence shall be immediately listed for sale with a licensed real estate agent and sold.

2

{¶8}     As to the W. 157th Street residence, the Divorce Decree stated:

[Appellant], at her option, shall be permitted to retain exclusive possession of the W. 157th Street property until the occurrence of one of the events set forth below. [Appellant] shall indemnify and hold [Appellee] harmless as to all obligations regarding said real property including but not limited to the mortgage, taxes, homeowner's insurance, maintenance and utilities.

[Appellant], at her option, shall have up to one year to either pay [Appellee] for his share of the equity in the W. 157th St. property or list the property on the market for sale. In the event [Appellant] elects to sell the property, then within one year of this final Judgment Entry of Divorce, said property shall be listed with a licensed real estate agent selected by mutual agreement of the parties and sold. In the event the parties are unable to agree, the parties shall follow the advice of the real estate agent regarding listing price, acceptance of offers, and counteroffers. Upon sale, after payment of the customary costs of sale, the proceeds shall be equally divided between the parties.

In the event [Appellant] elects to purchase [Appellee's] interest in said real property, she shall, within one year of this final Judgment Entry of Divorce, be ordered to pay [Appellee] $17,130.50 for his share of the equity.

{¶9}     Thus, under the Divorce Decree, Appellee assumed responsibility for the mortgages on Thompson Road residence and agreed to indemnify and hold Appellant harmless on the mortgages and other obligations for the property.

{¶10}   As to the W. 157th Street residence, Appellant agreed to indemnify and hold Appellee harmless for the mortgage payments. Appellant had the option to pay Appellee $17,130.50 for his share of the equity in the property or to list and sell the property with mutual participation of the parties and to divide the proceeds of the sale.

{¶11}   Appellant took exclusive possession of the W. 157th Street residence; Appellee took exclusive possession of the Thompson Road residence.

3

Case No. 2023-G-0048

**Temporary Agreement:**

{¶12}  A mere four and one-half months later, on September 28, 2015, the parties entered a Temporary Agreement to switch residences. Although the parties assumed responsibility for the utilities and other expenses along with the switch in residence, the parties remained responsible for their original mortgage expenses on the properties as set forth in the Divorce Decree until March 1, 2016.

**Post-Decree Motions:**

{¶13}  Appellee filed his post-decree Motion to Show Cause on April 14, 2021.

{¶14}  Appellant filed a Motion to Modify Child Support on November 4, 2021.

{¶15}  Appellant filed her Motion to Show Cause on December 7, 2021. Appellant said that Appellee's failure to make the Thompson Road mortgage payments as required resulted in her taking out a loan to stop a foreclosure on the residence and that she incurred late fees and finance charges.

**Hearing on the Motions:**

{¶16}  On August 26, 2022, the trial court held a hearing through a magistrate on the pending motions.

{¶17}  At the start of the hearing, Appellee withdrew the portion of his show cause motion pertaining to refinancing the Thompson Road residence because Appellant had since refinanced the loan. Second, the parties stipulated to the child support computation worksheet figures, which were entered into evidence as Court's Exhibit I. The parties agreed that "two of the four issues" raised had been resolved.

4

**Testimony relating to W. 157th Street residence:**

{¶18} Appellee testified that the parties owned two houses at the time of their divorce. Appellant did not list the W. 157th Street residence by May 11, 2016. Instead, Appellant sold the residence in December 2017. However, she did not pay Appellee $17,130.50 as required by the Divorce Decree.

{¶19} Appellee said he did not pursue court action on this issue sooner because there was still an ongoing dispute about the refinance of the Thompson Road residence. According to Appellee, Appellant told him repeatedly he would have to take her back to court to get her to refinance the Thompson Road residence.

{¶20} The proceeds from the sale of the W. 157th Street residence were $26,763.14. However, Appellee maintained that he was entitled to the full $17,130.50, not merely one-half of the proceeds of the sale, because Appellant did not sell the house within one year, as contemplated in the Divorce Decree.

{¶21} Appellant testified that she sold the W. 157th Street residence in 2017. According to her understanding of the Divorce Decree, she was obligated to pay Appellee one-half of the proceeds. However, she acknowledged that she had not done so. She acknowledged she did not consult with Appellee about the sale of the property but said she sold the property for the highest price she could.

**Testimony relating to Thompson Road Residence:**

{¶22} Appellant testified that after the Divorce Decree, the parties entered into an agreement to switch residences but that each party was to continue to make mortgage payments for their original residence until March 1, 2016. In September 2015, Appellant moved out of the W. 157th Street residence and into the Thompson Road residence.

5

{¶23} Appellant said that Appellee did not make the mortgage payments on the Thompson Road residence. When she began to make the payments in March 2016, the bank had initiated a foreclosure and refused to accept her monthly payments until she made a lump sum payment to catch up on the arrears. Appellant talked to Appellee about this issue, and he said that it was Appellant's "problem now."

{¶24} Appellant explained that the Thompson Road residence had an 80/20 mortgage with two outstanding balances. According to the bank statements, introduced as exhibits I and L, as of March 1, 2016, the total arrearage for both balances was $12,640.11.

{¶25} She testified that due to fees and the late payments, the bank was owed $19,809.66. Further, in order to make this lump sum payment, Appellant took a loan from her retirement account. She said that she needed to borrow double the amount she wanted to account for taxes and expenses associated with taking the loan. She claimed damages of approximately $28,862.00.

{¶26} Appellee testified that he was not able to pay the mortgage on the Thompson Road residence. He explained his inability to pay was the reason the parties switched houses in September 2015. However, he testified that he paid between $900.00 and $1,100 in "rent" to Appellant for the W. 157th Street residence from September through December 2015.

**Post-hearing filings:**

{¶27} After the hearing, Appellant filed a Motion for Partial Withdrawal of Stipulation. Court's Exhibit I set forth Appellee's out of pocket expenses for health insurance of $3,246.00. Appellant's motion questioned whether this amount was accurate

6

Case No. 2023-G-0048

and submitted a request for production of documents to Appellee. Appellant's motion requested that the $3,246.00 figure be stricken if Appellee did not substantiate it.

{¶28} On November 4, 2022, Appellant filed a Notice of Dismissal, dismissing her Motion for Partial Withdrawal of Stipulation.

{¶29} Despite Appellant's Notice of Dismissal of her motion, on November 11, 2022, the magistrate issued an order requiring Appellee to produce "documentation to substantiate the $3246 actual out-of-pocket health insurance costs on the proposed stipulations" within seven days. Failure to do so would result in Court's Exhibit I being stricken.

{¶30} On February 9, 2023, the magistrate ruled on Appellant's Motion for Partial Withdrawal of Stipulation, and the magistrate struck the amount from the proposed stipulation.

{¶31} On February 10, 2023, Appellee filed a Motion for Reconsideration of the magistrate's February 9 ruling, arguing that Appellant's November filing of a Notice of Dismissal of her Motion warranted reversing the ruling. However, the magistrate did not directly rule on the Motion for Reconsideration.

**Magistrate's Decision and Objections:**

{¶32} On October 11, 2023, the magistrate issued a decision. The decision stated that it was ruling on the two motions to show cause. The magistrate found that the parties had "stipulated to the figures and calculations for child support purposes and the [Appellant's] Motion to Modify Child Support was resolved thereby."

{¶33} As to the W. 157th Street residence, the magistrate found that Appellant owed Appellee $17,130.50 rather than one-half of the net proceeds of the sale for three

7

reasons: (1) Appellant did not sell the W. 157th Street residence until December 22, 2017; (2) Appellee did not have any say in the price, the realtor, the negotiation, or any part of the sale of the residence despite the Divorce Decree providing for Appellee's participation; and (3) the parties switched houses to accommodate the children and because Appellee could not afford the Thompson Road house.

{¶34} As to the Thompson Road residence, the magistrate found that Appellee had "failed to duly pay the mortgages for the Thompson Road property" and that because of this, Appellant "was caused damages in the approximate amount of $28,862.00 plus other costs, expenses and fees."

{¶35} The magistrate said that although Appellant established damages for Appellee's failure to timely pay the mortgage, Appellant also failed to timely refinance or sell the Thompson Road property as contemplated in the Divorce Decree. Because of this failure, Appellant was not solely at fault for the non-payment of the mortgage. Next, the magistrate determined that some of these damages might have been avoided had Appellant timely sold the W. 157th Street residence. Finally, the magistrate observed that Appellee had been making payments to Appellant but that he did not have any documentation to support his testimony.

{¶36} Therefore, the magistrate determined that "[u]nder these circumstances, the [Appellee] should not be 100% responsible for the expenses the [Appellant] incurred to rescue the Thompson property from foreclosure. [Appellant's] own conduct and decision arguably contributed to [Appellee's] default. . . . [N]either party has clean hands." Thus, the magistrate declined to find either party in contempt of court. Both parties were ordered to bear their own attorney fees, and Appellant was ordered to pay Appellee $17,130.50

8

for his share of the equity of the W. 157th Street residence, less one-half of the amount Appellee was behind on the mortgages as of March 1, 2016, pursuant to Exhibits I and L.

**{¶37}** On October 24, 2023, Appellant filed Objections to the Magistrate's Decision. Appellee did not file a response to the objections.

**{¶38}** On December 15, 2023, the trial court issued a judgment entry adopting the Magistrate's Decision.

**{¶39}** Appellant timely appealed, raising three assignments of error. [1]

### Assignments of Error and Analysis

**{¶40}** Each of Appellant's assignments of error relates to the trial court adopting the magistrate's decision. "When reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion in adopting the decision." *Huntington Natl. Bank v. Betteley*, 2015-Ohio-5067, ¶ 17 (11th Dist.). "Further, any claimed error on appeal must be based on the trial court's actions, and not on the magistrate's decision." *Id.*

**{¶41}** "The term 'abuse of discretion' . . . is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.). An abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004); *State v. Raia*, 2014-Ohio-2707, ¶ 9 (11th Dist.). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough

---

1. Appellant was represented by R. Russell Kubyn, in this appeal. However, after briefing closed but before oral arguments, Attorney Kubyn passed away. Appellant proceeded pro se during oral arguments.

Case No. 2023-G-0048

to find error[.] . . . By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Raia* at ¶ 9, quoting *Beechler* at ¶ 67.

**{¶42}** "In construing a divorce decree, a court must give common words their ordinary meaning unless some other meaning is clearly suggested from the face of the decree or its overall contents." *Allen v. Allen*, 2022-Ohio-3198, ¶ 65 (11th Dist.). "Language is ambiguous if it is susceptible to two or more conflicting, yet reasonable, interpretations." *Id.* It is an issue of law whether language is ambiguous. *Id.* However, it is an issue of fact as to the parties' intent if the language is capable of two reasonable but conflicting interpretations. *Id.*

**{¶43}** Appellant's first assignment of error is: "The trial court erred and committed an abuse of discretion, including adopting the Magistrate's Decision, finding that Appellant owed $17,130.50 to the Appellee from the sale of the Cleveland Property. (T.d. 303, 306, 311)."

**{¶44}** Pursuant to the terms of the Divorce Decree, Appellant had two options: the first was to list and sell the W. 157th Street residence and split the net proceeds evenly with Appellee. In relation to this option, the Divorce Decree provided that Appellant "had up to one year . . . to list the property on the market for sale" and further provided: "In the event [Appellant] elects to sell the property, then within one year of this final Judgment Entry of Divorce, said property shall be listed with a licensed real estate agent selected by mutual agreement of the parties and sold." The second was to pay Appellee $17,130.50 for his share of the equity in the property. Although Appellant was required to

10

exercise either option within one year, she failed to do so. A review of the facts indicates that she did not list the property within one year but that it was listed in 2017. Nevertheless, she did ultimately sell the property in December 2017, at which time she received $26,763.14 in net proceeds. So, Appellant exercised the first option as detailed in the Divorce Decree (albeit tardily). Therefore, Appellant owed Appellee one-half of the net proceeds of the sale.

{¶45} The trial court abused its discretion in ordering Appellant to pay Appellee $17,130.50 for his share of the equity in the property when the actual sale of the property yielded only $26,763.14 in net proceeds. Appellant testified that she sold the property for the highest price she could obtain, and Appellee is entitled to one-half of the proceeds: $13,381.57.

{¶46} Accordingly, Appellant's first assignment of error has merit.

{¶47} Appellant's second assignment of error is: "The trial court erred and committed an abuse of discretion, including adopting the Magistrate's Decision, finding the Appellee was not in contempt of court, contrary to the clear and convincing evidence to the contrary. (T.d. 303, 306, 311)."

{¶48} "'Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. Indirect contempt may include the disobedience of, or resistance to, a lawful order, judgment, or command of a court officer.'" (Internal citations and footnote omitted.) *Miller v. Miller*, 2020-Ohio-6914, ¶ 8 (11th Dist.), quoting *Dozer v. Dozer,* 88 Ohio App.3d 296, 302 (4th Dist. 1993). "Where the contempt allegation is based on violation of a court order, the order must be clear and definite with respect to the precise

11

Case No. 2023-G-0048

conduct constituting disobedience." *Lanza v. Lanza*, 2023-Ohio-3531, ¶ 7 (11th Dist.); *see Cain v. Cain*, 2019-Ohio-184, ¶ 21 (11th Dist.).

**{¶49}** The burden of proof for finding civil contempt is clear and convincing evidence. *Kolenic v. Kolenic*, 2018-Ohio-1106, ¶ 18 (11th Dist.). "Clear and convincing evidence is . . . evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Janson*, 2005-Ohio-6712, ¶ 33 (11th Dist.). "A reviewing court 'will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion.'" *Kolleda v. Kolleda*, 2014-Ohio-2013, ¶ 42 (11th Dist.), quoting *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981).

**{¶50}** A person charged with contempt of court for violating a court order may defend the charge by proving it was not in the person's power to obey the order. *Stychno v. Stychno*, 2009-Ohio-6858, ¶ 38 (11th Dist.). "Once a person seeking contempt has demonstrated a defendant's failure" to comply with the court order, "the burden of proof shifts to the defendant to prove" the impossibility of compliance. *Smith v. Smith*, 2013-Ohio-4101, ¶ 41 (11th Dist.) (addressing the inability to pay child support).

**{¶51}** In declining to hold Appellee in contempt, the magistrate's decision found that Appellee did not have the ability to pay the mortgage on the Thompson Road residence. Appellee testified the reason the parties switched houses in September 2015 was because he did not have the ability to continue to make the mortgage payments. However, the terms of the temporary agreement required that he continue to pay the Thompson Road mortgage payments until March 1, 2016. Thus, the trial court did not

12

abuse its discretion by declining to hold Appellee in contempt because the court concluded that Appellee did not have the ability to obey the Divorce Decree.

{¶52} But, the trial court only ordered Appellee to pay one-half of the amount he was behind on the mortgages as of March 1, 2016. This was an error. The Divorce Decree required Appellee to indemnify and hold Appellant harmless on the Thompson Road mortgages and other obligations for the property. While Appellee's inability to pay the mortgage from September 2015 through March 2016 may relieve him of a contempt finding, it does not relieve him from his obligation to indemnify Appellant fully for that expense.

{¶53} The magistrate decided it did because Appellant was partially responsible for the default on the Thompson Road residence. The magistrate came to this conclusion for two reasons. First, the magistrate reasoned that "if [Appellant] had timely refinanced or sold the Thompson property as the order required, the [Appellee] would not likely have been burdened with the continuing expense." However, under the May 11, 2015 Divorce Decree, Appellee had until May 10, 2016, to refinance or otherwise remove Appellant from the Thompson Road mortgages. If Appellee failed to do so, then Appellant had 90 days to remove Appellee from the mortgages. When Appellant assumed the mortgage payments in March 2016, Appellee's one-year period to refinance or sell had not yet expired, and Appellant's 90-day window to do so had not yet begun.

{¶54} Second, the magistrate found that Appellant was partially responsible for the Thompson Road default because Appellant did not timely pursue a sale of the W. 157th Street residence. Had she done so, the magistrate said that Appellee "might have

13

received his proper share of the proceeds earlier which, in turn, may have enabled [Appellee] to keep the Thompson property mortgage payments up to date."

{¶55} Appellee had no right to Appellant's noblesse when he fell behind on the mortgage payments. The May 11, 2015 Divorce Decree contemplated that Appellant had "up to one year to either pay [Appellee] for his share of the equity in the W. 157th St. property or list the property on the market for sale." When Appellant assumed the payments for the Thompson Road mortgages in March 2016, her time to either sell the W. 157th Street residence or pay Appellee his share of the equity had not expired.

{¶56} Perhaps more importantly, Appellant cannot be said to have assumed any portion of those arrears when she paid them. After Appellant assumed the Thompson Road mortgage payments, which were already in a state of foreclosure, Appellee told Appellant that it was her "problem now." In fact, the terms of the Divorce Decree and the Temporary Agreement made clear that Appellee was to indemnify Appellant and hold her harmless on the Thompson Road mortgage payments up to March 1, 2016. Although the magistrate noted that Appellee had paid "monies" to Appellant during the relevant period, the decision minimized the persuasiveness of this testimony and found that Appellee had "failed to provide any specific testimony or any documents in support thereof."

{¶57} Finally, the magistrate specifically found that Appellant had incurred costs of approximately "$28,862.00 plus others costs, expenses and fees" in bringing the Thompson Road residence mortgage out of foreclosure. Yet, apparently because the magistrate found that Appellant did not have clean hands, the magistrate only ordered Appellee to repay one-half of the Thompson Road mortgage arrearages to Appellant.

14

Case No. 2023-G-0048

{¶58} The trial court said that it "agrees with the analysis set forth in the Decision and Conclusions of Law in the Magistrate's decision" and ordered that Appellant pay $17,130.50, less one-half of the amount Appellee was behind on the mortgages as of March 1, 2016.

{¶59} We find that the trial court abused its discretion in determining that the magistrate's analysis was correct.

{¶60} The magistrate plainly misinterpreted the Divorce Decree and negatively applied provisions not yet in effect against Appellant in finding that Appellant's "own conduct and decisions arguably contributed to [Appellee's] default." Further, there is no question that Appellee was 100 percent responsible for the Thompson Road mortgages from September 2015 to March 1, 2016, as the decree provided that Appellee was to indemnify and hold Appellant harmless for the mortgage until March 1, 2016.

{¶61} Yet, the trial court only held Appellee responsible for paying one-half of that amount. This ruling failed to give the ordinary meaning to the plain language of the Divorce Decree and subsequent Temporary Agreement, which required Appellee to pay 100 percent of the Thompson Road mortgage payments until March 1, 2016. The trial court did not exercise sound and reasonable decision-making in this regard. Appellant should not be responsible for any portion of the arrearages or the damages Appellant suffered as a direct result of Appellee's failure to pay.

{¶62} Accordingly, Appellant's second assignment of error has merit.

{¶63} Appellant's third assignment of error is: "The trial court erred and committed an abuse of discretion, including adopting the Magistrate's Decision, ignoring the issue of

15

child support based upon an incorrect and/or withdrawn alleged stipulation. (T.d. 212, 281, 303, 306, 311)."

**{¶64}** It is true that the magistrate granted Appellant's Motion for Partial Withdrawal of Stipulation. However, by the time the magistrate had done so, Appellant had already filed a Notice of Dismissal, dismissing her Motion for Partial Withdrawal of Stipulation. Appellant has not addressed on appeal the dismissal of her motion and makes no effort to explain why the trial court should have ruled on an issue that she raised and dismissed. The trial court did not err when it did not address Appellant's Motion to Modify Child Support as Appellant had dismissed her Motion for Partial Withdrawal of Stipulation.

**{¶65}** Accordingly, Appellant's third assignment of error is without merit.

**{¶66}** For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded. On remand, Appellant shall be responsible to pay one-half of the net proceeds of the sale of the W. 157th Street residence to Appellee. Appellee shall be responsible to pay Appellant's damages that resulted from Appellee's failure to pay the Thompson Road mortgages, found by the trial court to be "the approximate amount of $28,862.00 plus other costs, expenses and fees."

EUGENE A. LUCCI, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2023-G-0048